## AUTOMATIC WASHER CO. v. EASY WASHING MACHINE CORP.

### No. 3354.

United States District Court,
N. D. New York.

May 8, 1951.

See also D.C., 91 F.Supp. 894.

Hiscock, Cowie, Bruce, Lee & Mawhinney, Syracuse, N. Y., and Toulmin & Toulmin, Dayton, Ohio, for plaintiff, Gerald Henley, Syracuse, N. Y., and Harry A. Toulmin, C. E. Crafts, Dayton, Ohio, of counsel.

Hancock, Dorr, Ryan & Shove, Francis P. Keiper, Syracuse, N. Y., and Fraser, Myers & Manley, New York City, for defendant, John Gates, Syracuse, N. Y., and Howard J. Churchill, New York City, of counsel.

BRENNAN, Chief Judge.

The complaint on its face sets forth a claim for relief based upon trade-mark infringement. It is alleged that the action arises under the Trade-Mark Laws of the United States and charges in substance that the use by the defendant of the designation "Spindrier" is a colorable imitation of plaintiff's registered trade-mark "Spindry", and an infringement thereof as applied by the defendant to its washing machines or laundry equipment. The plaintiff seeks an injunction, an accounting of profits, and treble damages.

The answer denies infringement, ownership by the plaintiff of the mark, the validity of the registration, and pleads abandonment, estoppel and laches. The cancellation of plaintiff's trade-mark registration is sought. Defendant also counterclaims seeking an award of money damages.

The trial record of this case is voluminous and is supplemented by a large number of exhibits. Plaintiff submits briefs of something over one hundred pages, partially printed and partially typewritten. The defendant's briefs are composed of about seventy typed pages. With such a background, if this opinion is to be kept within reasonable length, it is readily understandable that a statement of the facts and discussion of law must be drastically condensed.

The parties to this action are both Delaware corporations. Plaintiff's principal place of business is at Newton, Iowa. Defendant's principal place of business is at Syracuse, New York. Plaintiff and defendant are both engaged in the manufacture of washing machines and laundry equipment. They are definitely competitors in the field of the manufacture and sale of domestic washing machines. This one item of merchandise is involved in this litigation.

In 1931 Prima Manufacturing Co., Inc. of Sydney, Ohio, was engaged in the manufacture of a washing machine which was composed of two tubs, one of which enclosed an agitator type of mechanism designed to cleanse or wash clothes placed therein. The smaller tub or cylinder contained a mechanism of a rotary type which, when used, would extract the water from the clothes by use of the principle of centrifugal force. On October 4, 1932 it caused to be registered in the United States Patent Office its trade-mark composed of the words "Prima Spin-Dry". This registration was granted under the 1905 Act, now 15 U.S.C.A. § 1051 et seq. The word "Spin-Dry" was disclaimed apart from the mark as shown. In 1934 Prima filed a petition for reorganization under the then existing provisions of the Bankruptcy Law and generally referred to as 77B, 11 U.S.C.A. § 207. A trustee was appointed who continued the business from 1934 until December 16, 1936, when all assets were sold to Dallas E. Winslow, Inc. A few months later a new corporation was formed; to wit, Prima Manufacturing Corporation, and the assets of the Winslow Company transferred thereto. This Prima corporation continued the business until April 3, 1939, when its manufacturing plant was destroyed by fire. In June, 1939, part of the assets, including the machinery and special equipment relating to the manufacture of spinner type washers was transferred to Automatic, the plaintiff herein. In all of the above transactions all trademark rights were transferred to each succeeding purchaser, so that Automatic became the owner thereof, as above indicated. Automatic then started to manufacture the same type of washer as above described, and continued until about 1942, when further manufacture was forbidden by governmental restriction. In 1944, Automatic caused the trade-mark "Spin-dry" No. 408,-153 under the 1920 Act, now 15 U.S.C.A. §§ 1057(e), 1091, 1092, 1094, 1111, 1114, 1117, 1126, to be registered in the United States Patent Office. In its statement it was recited that the trade-mark had been used continuously and applied to laundry machines in the business of the applicant or its predecessors since 1931, and that the mark had been in bona fide use for not less than one year in interstate commerce by the applicant or its predecessors. It was recited that the plaintiff is the owner of the trade-mark registration of 1932 above referred to.

Easy has been continuously engaged in the manufacture of laundry equipment over a period of many years. Early in September, 1939, it introduced in interstate commerce a domestic washing machine which may be described generally as similar to the product manufactured by Automatic and its predecessors. The manufacture and sale of such machines has continued to date. Easy has registered several trade-marks, but the only one appearing to be connected with the issues here is the registration under the Act of 1905, granted February 27, 1940, which may be generally described as a composite mark containing the words "Spiralator" and "Spindrier", superimposed over the word "Easy". In this registration the use of the word "Spindrier" was disclaimed apart from the mark as shown.

The above facts are not disputed and may be termed historical in nature. In the main there is no serious conflict in the factual evidence, and the problem is to draw the proper inferences therefrom and to apply the applicable law. To find the nature and extent of the use of the words "Spin Dry" in the washing machine industry is a necessary background for the determination of the issues here.

The evidence in this case overwhelmingly indicates that the words "Spin Dry—either separately or in a hyphenated form— have been used for some years prior to 1931 and continuously since that date to refer to and describe laundry equipment designed to force the water from washed clothes by use of a high speed rotating mechanism, as distinguished from the wringer type laundry equipment. The term was and is extensively used by many large washing machine manufacturers in their advertising and operating instructions. It was also used in writings referring to household laundry equipment. Commencing in 1928, the Savage Arms Corporation of Utica, New York, a large manufacturer of washers, caused the words "Spin-Rinse" —"Spin-Dry" to be placed upon the name plate of the Savage washer. Such use continued until 1947 with the exception of the war years and also prior to any similar use by plaintiff's predecessors which began in 1931.

During the period from 1931 to 1934 the Prima Manufacturing Co., Inc. affixed the word Spin-Dry to the tub or cylinder in which the drying operation was performed, while the word Prima was placed upon the tub in which the washing operation was performed. The extent of such 'use' does not clearly appear in the evidence, but it is fair to say that Prima's manufacturing operations were not large. The evidence is not clear as to the actual use of the term from 1934 to 1939, when the manufacture of the so-called Prima Washer was carried on by the Trustee in reorganization, the Dallas Winslow Co. and Prima Manufacturing Corporation. The evidence warrants, however, the conclusion that the washers manufactured during that period were marked in the same manner as in the case of the original Prima product. In 1939, Automatic, having purchased the equipment necessary to manufacture the Prima machine, began its first actual manufacture. Its first sale occurred on September 26 or 28, 1939. There was manufactured by Automatic from that time until 1942, when governmental restrictions prohibited further manufacture, a total of about five thousand machines. For the first part of that period the machine was identical with the so-called "Prima" machine and Automatic claims that it was marked with the words "Prima" on the washing tub and "Spin-dry" on the spinner compartment. Later the same type of machine was manufactured with the name Automatic appearing thereon as the manufacturer. Easy contends that the evidence is insufficient to show that the mark was affixed to the machine so manufactured, and such contention has a basis in the evidence. Even if it be assumed that the machines manufactured during that period were marked as claimed by Automatic, the point is not of great importance for the reason that Macy & Co. was the principal customer of the machines manufactured by the plaintiff and its predecessors, and that during the period under discussion, to wit, 1939 to 1942, about thirty-three hundred of the five thousand machines manufac-

tured by Automatic were sold to Macy's and distributed to the retail trade through Macy's New York store. These machines bore no evidence that Automatic was the manufacturer thereof. In fact, they were so marked as to convey the impression that Macy was the manufacturer thereof. Even if we assume that the remaining machines, about seventeen hundred in number, were marked as claimed by Automatic, such assumption is only available as a circumstance to establish a secondary meaning in the words "Spin Dry". It is conceded that from 1942 until the commencement of this action, Automatic did not affix the word "Spin-dry" to its domestic washing machines manufactured during that period. Beginning in 1940, Automatic distributed a considerable number of circulars or pieces of advertising literature, and advertised its product to some extent in newspapers and trade magazines.

Easy commenced the manufacture of domestic washing machines labelled with the 1940 registered trade-mark of "Easy Spiralator Spindrier" about August, 1939. The first interstate transaction or sale involving a machine so marked was made September 5, 1939, and similar shipments continued from that date to some time in 1942, when the manufacture of washing machines was stopped by governmental regulations. Fifty-nine thousand such machines so labelled or bearing the words "Spiralator Spindrier", together with the name Easy, were manufactured and sold during that period. After the government's restriction had been raised, Easy manufactured and sold about nine hundred thousand machines up to the commencement of this action labelled "Easy Spindrier". About $1,000,000 has been spent in advertising Easy Spindrier washing machines between October 1, 1939 and the date of the commencement of this action.

The Court now turns to a consideration of the principles of law which must be applied to the facts recited above in order to reach its decision.

■■ A question of the jurisdiction of this court is raised by the defendant, which may well be disposed of here. The com-

plaint alleges the infringement of plaintiff's trade-mark registration under the 1920 Act. Such allegation, unless plainly unsubstantial, is sufficient to confer jurisdiction upon the court to determine the issue of infringement. If plaintiff should fail on that issue and the complaint is construed broad enough to raise the common law issue of unfair competition, then the court has jurisdiction to determine such controversy, since both causes of action rest upon substantially the same grounds. Armstrong Paint and Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Best and Co. v. Miller, 2 Cir., 167 F.2d 374; Hanson v. Triangle Publications, 8 Cir., 163 F.2d 74, at page 79; See also 28 U.S.C.A. § 1338.

The crux of Automatic's claim is that Easy has competed and is competing unfairly by attaching to its domestic washing machines and using in its advertisements the word "Spindrier", thereby infringing upon its trade-mark "Spin-dry".

It is stated that the complaint in this action is based upon the pleading in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, and that decision is urged as an authority here. Factually it appears that there is one important distinction between the Nu-Enamel case and the instant case. A secondary meaning was conceded to exist in the former, while it is definitely a controversial question here.

■ Using the decision in the Nu-Enamel case as a starting point, it is apparent that there may be no recovery here either upon the basis of infringement, 305 U.S. at page 335, 59 S.Ct. at page 201, 83 L.Ed 195, or upon the basis of unfair competition, 305 U.S. at page 336, 59 S.Ct. at page 201, 83 L.Ed. 195, unless Automatic has established that the word "Spin-dry" as applied to domestic washing machines means Automatic's merchandise and its alone. This is another way of saying that plaintiff's registration under the 1920 Act creates no presumption of ownership, and, if recovery is to be had under a claim of infringement ownership must be established by evidence sufficient to show that the mark by its use has acquired a sec-

ondary meaning. It also means that, even though a descriptive mark is not a good trade-mark at common law, it will be protected in an unfair competition action only if a secondary meaning is established.

The Second Circuit in Speed Products Co. v. Tinnerman Products, 179 F.2d 778, recognizes the principles stated above, and the parties hereto do not seriously dispute same.

It becomes apparent then that the determination as to whether or not the word "Spin-dry" has acquired a secondary meaning is determinative of the plaintiff's cause of action either upon trade-mark infringement or unfair competition. That the word "Spin-dry" is descriptive when used in advertising is hardly open to argument. It implies in the washing machine industry a machine which performs the drying operation by a spinning or revolving mechanism as distinguished from the wringer type laundry equipment, which accomplishes the same result. The word is not fanciful nor unique. It is a general term in common use.

The problem of determining rights in a generic term or word is not unusual. The word "Spin-dry" is incapable of exclusive appropriation. Elgin Nat'l Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365, and being words of common speech a secondary meaning capable of supporting a finding of ownership required under the doctrine of the Nu-Enamel Corp. Case " * * * is harder to create and easier to lose * * *" than in the case of coined or fanciful words. Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 85 F.2d 46, 48.

The doctrine of the creation of a secondary meaning seems to be recognized in the 1946 statute, 15 U.S.C.A. § 1051 et seq. as applying to a mark which has become distinctive of applicant's goods in commerce. The law provides no all-inclusive definition of the term, but the authorities are agreed that to acquire a secondary meaning the evidence must show that the term has been used in such a manner, over such a period of time, and to

such an extent that the purchasing public associates the term with the goods of a particular manufacturer. The query here is: Does the evidence show that the purchasing public associate the term "Spin-dry" only with Automatic's washers?

There is no inflexible rule to determine the existence of a secondary meaning. Each case must be decided upon its own facts. The following quotation taken from Sun Valley Mfg. Co. v. Sun Valley Togs, Inc., D. C., 39 F.Supp. 502, at pages 503 and 504, is applicable. "The elements to be considered in determining whether a name has acquired a secondary meaning are generally (a) length of use of such name, (b) the nature and extent of popularizing and advertising such name, (c) the efforts in promoting the consciousness of the public in connecting that name with a particular product."

Here the extent of the use by Automatic's predecessors is not clear, but it is evident that the word "Spin-dry" placed upon the drying tub entirely apart from the word "Prima" is descriptive of the function of that part of the machine, rather than indicating the name of the manufacturer. Whatever evidence there is as to the purpose of such use indicates that it was descriptive. Automatic's use of the term was limited to the period between 1939 and 1942, and even if it be assumed that the term "Spin-dry" was placed on each of the seventeen hundred washing machines manufactured by Automatic and sold to the general trade during that period, that fact does not constitute satisfactory evidence of the existence of a secondary meaning. The extensive and continuous use of the word "Spin-dry" by many washing machine manufacturers, the actual affixing of the words "Spin-Dry" and "Spin-drier" to the Savage and Easy washers are important facts militating against such a finding.

The Court is satisfied that the evidence is entirely insufficient to sustain the burden of proof imposed on Automatic to establish that the mark "Spin-dry" has acquired a secondary meaning so as to afford

a basis for a finding of ownership in the plaintiff of the mark "Spin-dry" either upon the theory of trade-mark infringement or unfair competition.

The finding above made renders unnecessary the discussion of the remaining contentions made by Easy, which are urged as sufficient to defeat plaintiff's recovery either on the theory of trade-mark infringement or unfair competition.

Easy in its answer sets up defenses challenging the validity of the plaintiff's 1944 registered trade-mark "Spin-dry". In the counterclaim contained in the answer the defendant invokes the provisions of Section 38 of the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1120, which is a reenactment of a similar provision found in the prior statutes to recover money damages based upon allegations of fraud and falsity on the part of Automatic in the registration proceedings.

The power of the Court to invalidate registrations is conferred in broad terms under the present Act. 15 U.S.C.A. § 1119. It seems to be the intent of the statute that in a litigation where the parties are afforded the opportunity to present all pertinent evidence the Court should proceed to correct the registry where the evidence warrants such action.

The defendant advances about six contentions which are urged as separate bases for a finding of invalidity and an order directing cancellation. It is unnecessary to discuss them in detail.

A mark registered under the 1920 Act, Sec. 1(b), now 15 U.S.C.A. §§ 1091, 1126, must have been in bona fide use for not less than one year in interstate commerce prior to its registration, and it may not be registered if it is confusingly similar to a known trade-mark used in interstate commerce. Under the Act of 1920 all decisions of the Commissioner of Patents in granting or refusing registrations under that Act are final. In Re Cohen, Goldman & Co., Inc., 119 F.2d 599, 28 C.C.P.A., Patents, 1141; Postum Co. v. California Fig Co., 54 App.D.C. 285, 297 F. 544; Id., 272 U.S. 693, 47 S.Ct. 284, 71 L.Ed. 478. Recourse then must be had to administrative decisions interpreting the requirements for registration to determine whether or not the legal requirements were met by Automatic in the registration of its mark.

The requirement of the statute as to bona fide use for not less than one year has been uniformly interpreted to mean use to the exclusion of others for at least one year next preceding the date of the filing of the application. Fortune Tobacco Co. v. Axton-Fisher Co., 22 U.S.P.Q. 366; Bosch v. American Bosch Corp., 2 U.S. P.Q. 15; Frutana Co. v. Musselman, 45 U.S.P.Q. 231; Kellogg Co. v. Shredded Wheat Co., 55 U.S.P.Q. 213.

In paragraph VI of the complaint the essential charge is that Automatic's trade-mark "Spin-dry" has been infringed by the use of the term "Spindrier" in the trade-mark "Easy Spiralator `Spindrier". It is charged that the word "Spindrier" as used is a colorable imitation of "Spin-dry". The alleged infringing trade-mark was first used in interstate commerce early in September, 1939, and the mark was registered in 1940, so that Automatic is put in the rather inconsistent position of alleging an infringement by Easy in the use of "Spindrier" which is a fragment of its trade-mark registered four years prior to the mark infringed. There is no doubt that Automatic knew of Easy's use of the alleged infringing mark prior to its registration of the word "Spin-dry", and it is difficult to conclude that it can be found that plaintiff had an exclusive use of the term under such circumstances. Automatic has answered this contention by urging that the word "Spindrier" was disclaimed in Easy's 1940 registration, which is a fact. Such disclaimer, however, operates only as an acknowledgment that the right to the use of the words disclaimed is not claimed to be exclusive, but it does not operate to surrender to a late comer the exclusive right therein. Warner-Patterson Co. v. Malcomb, 77 F.2d 950, 22 C.C.P.A. Patents, 138; Vi-Jon Laboratories v. Lentheric, 133 F.2d 947, 33 C.C.P.A., Patents, 916.

452

The continuous use of the word "Spin-dry" by the Savage company would seem also to contradict Automatic's statement as to its exclusive or bona fide use. Automatic claims that the words as used by Savage were descriptive or as a slogan. The Court is inclined to agree with that contention. However, the words "Spin-rinse" and "Spin-dry" appeared on the name plate affixed to the Savage washer tub which performed both operations. While the proof shows that the word "Spin-dry" when used by Automatic was affixed to the tub which performed the drying operation. It is rather difficult to distinguish between the two uses, and it may well be that Automatic's use of the word "Spin-dry" was at all times a functional or descriptive use and never reached the dignity of a trademark use. In any event the use of the terms by both Easy and Savage forecloses a finding that Automatic had the exclusive use of the word "Spin-dry" as required by the 1920 Act.

In view of the above conclusion it is unnecessary to discuss and apply the provisions of the statute which refer to use in interstate commerce for one year. The question there would be whether or not the administrative interpretations as to the requirement of one year's use is affected by governmental restriction. The question becomes unimportant, since it has been concluded that Automatic had no such bona fide use of the term "Spin-dry" during any particular year prior to its application for registration. It may be added that the registration statement as to continuous use is patently incorrect.

It appears to the Court that Automatic's trade-mark is invalid, and that the registration should be cancelled, for the reason that Automatic's mark "Spin-dry" had not been in bona fide use in interstate commerce for any period not less than one year prior to its registration.

In view of the decision, the further contentions that Automatic's trade-mark is inherently incapable of acquiring a trade-mark use; that it is confusingly similar to Easy's trade-mark registration of 1940, and that Prima's disclaimer as to the use of the word "Spin-dry" operates as an estoppel, will not be decided here.

Defendant's counterclaim has been considered as has the section of the law upon which the claim is based. The section in question has apparently been little used, since judicial precedents thereunder appear to be few in number. The purpose of the section seems to be punitive and intended to be used only upon a finding of wilful falsity or misrepresentation. It is sufficient to say that the Court finds the evidence insufficient to sustain the claim, and the counterclaim must, therefore, be dismissed.

In addition to the findings and conclusions set forth herein, other findings and conclusions are made as follows.

### Findings of Fact.

1. The plaintiff has failed to establish ownership of the trade-mark "Spin-dry" which would afford a basis for a recovery in this action either upon the theory of trade-mark infringement or unfair competition.

2. Plaintiff's trade-mark "Spin-dry" No. 408,153, registered July 18, 1944, had not been in bona fide use for not less than any one year in interstate commerce at the time application was made for the registration of said mark or at the time of the actual registration thereof.

3. The evidence is insufficient to sustain the cause of action set forth in defendant's counterclaim herein.

### Conclusions of Law.

1. The Court has jurisdiction of this cause of action and of the parties thereto.

2. The complaint should be dismissed.

3. The trade-mark Registration No. 408,153, registered in the United States Patent Office on July 18, 1944, consisting of the word "Spin-dry" should be cancelled.

4. Defendant's counterclaim should be dismissed.

5. Judgment is directed accordingly.