**UNITED STATES BLIND STITCH MACHINE CORPORATION,** also known as **U. S. Blind Stitch Machine Corp.,** Plaintiff,

v.

**UNION SPECIAL MACHINE COMPANY,** Defendant.

No. 63 Civ. 2433.

United States District Court
S. D. New York.

July 31, 1968.

Kaye, Scholer, Fierman, Hays & Handler, New York City, by Milton R. Wessel, Frederick R. Biehl and David Goldberg, New York City, of counsel, for plaintiff.

Fish, Richardson & Neave, New York City, Wm. Kerr, John O. Tramontine and Arthur A. Anderson, New York City, of counsel, for defendant.

## OPINION

EDELSTEIN, District Judge.

This is an action for common law trademark infringement and unfair competition between competitors in the manufacture, distribution and sale of industrial sewing machines. Plaintiff complains that defendant is infringing its trademark "US" by using the identical letters as its trademark.

Plaintiff is a New York corporation and is the successor in interest to a business commenced in 1925 under the same name. Although plaintiff's corporate name is United States Blind Stitch Machine Corporation, it conducts its business under the name "U. S. Blind Stitch Machine Corp." and the preponderance of the credible evidence impels to the conclusion that plaintiff is known throughout the industrial sewing machine industry as "U. S. Blind Stitch." Plaintiff began using "US" as its trademark in the late 1920's. This "US" was usually in the form of letters inside a red keystone. This mark was never registered. From 1925 to 1956 plaintiff's sole product was blind stitch sewing machines. Blind stitch machines are specialized sewing machines which are used to finish cuffs and lapels on men's clothes, to fell or hem the bottoms of coats, jackets, skirts, dresses and draperies, and generally to finish a piece of sewn work so that the stitch is unseen. In 1956 plaintiff expanded its line of equipment to include a broader range of industrial sewing machines by becoming the exclusive United States distributor of a line of machines made in Italy and sold in the United States under the marks "RIMOLDI" and "US."

Defendant, an Illinois corporation, was incorporated in 1881 under the name Union Bag Company. Its name was changed to Union Special Machine Company in 1904. Defendant is the second largest manufacturer of industrial sewing machines in the United States, Singer being the largest. Until 1958 defendant did not have a blind stitch machine in its line of sewing machines. In 1958 defendant acquired the assets of the Lewis Invisible Stitch Machine Co. and the Columbia Sewing Machine Corp., manufacturers of blind stitch machines. Although the record is not quite clear, it appears that Lewis and Columbia were separate companies controlled by the same interests. In November 1959 defendant, for the purpose of trademark registration, shipped six machines in interstate commerce bearing a highly stylized US as a trademark. This mark was adopted by defendant after an extensive search during which time defendant considered numerous emblems and insignia including plaintiff's. Defendant filed for registration on December 30, 1959. On December 7, 1960, defendant began mailing the December 1960 issue of "Needle's Eye," its house magazine, to the industrial sewing machine industry. The "Needle's Eye" had a circulation of 50,000 copies. The December 1960 issue contained an announcement of Union Special's new mark as well as a picture of that mark. On December 19, 1960, the Patent Office notified defendant that the mark appeared to be entitled to registration and that the mark would be published in the Official Gazette of the Patent Office on January 10, 1961, for the purpose of opposition. No opposition was filed and on March 28, 1961, the Patent Office registered the mark. The mark came to the attention of plaintiff's officers in early 1961 when they saw a copy of the December 1960 issue of the "Needle's Eye." Plaintiff petitioned to cancel the registration in February 1962. Thereafter, this suit was commenced, and the Patent Office proceedings were suspended pending the outcome of this action. Sometime after Union Special acquired Lewis and Columbia, Singer acquired the American Blind Stitch Company. At present, only plaintiff, defendant, and Singer manufacture blind stitch machines.

Plaintiff alleges in its complaint that this court has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction). Since plaintiff is a New York corporation and defendant is an Illinois corporation and at the trial it became readily apparent that the matter in controversy exceeds the value of $10,000, this court has jurisdiction under 28 U.S.C. § 1332. This court need not consider plaintiff's additional allegations that this action arises under 15 U.S.C. §§ 1120, 1125(a) and that therefore this court has jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Nevertheless, the court will consider these substantive allegations, infra.

■ It is elementary that plaintiff must establish that "US" is its trademark and that the mark is entitled to protection before it can recover in this action. There is no question but that plaintiff has been using the block "US" as its mark. There is a question, however, as to whether that mark is entitled to protection. Since plaintiff's mark is not registered, plaintiff relies on common-law rights. See Atlantic Monthly Co. v. Frederick Ungar Publishing Co., 197 F.Supp. 524, 528 (S.D.N.Y. 1961). Although technically New York law would be applicable in this diversity action, both the federal and New York courts apply the same basic principles in unfair competition cases. See Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 497 n. 1 (2d Cir. 1962).

■■ It is a matter of common experience that the initials "US" usually stand for an abbreviation of the United States as in this case where plaintiff's "US" mark is obviously derived from its business name "U. S. Blind Stitch Machine Corp." which, in turn is a short form of its legal name "United States Blind Stitch Machine Corporation." The general rule as to protection of trademarks has been succinctly stated:

At common law a trade-mark must reflect a certain originality in respect to the goods it identifies; that is, it must be either coined (without independent meaning: "Kodak"), or arbitrary (a common word that is arbitrary as applied: "Swan" soap). This class of "technical trade-marks" does not include words which, although used to identify goods, also provide information about certain qualities of the goods—that is, "descriptive" words ("Honey Krust" bread). Nor does it include words which indicate or purport to indicate the geographical origin of the goods ("Lackawanna" coal), or consist of a person's name ("Ford" cars). However, these three types of marks are protected as "common-law trade names" if they have acquired a "secondary meaning," a special significance in the public mind as referring the products bearing the mark to a single source. Thus the public might after a time come to think of "Honey Krust" not primarily as describing certain qualities of the bread, but as indicating that the bread comes from one bakery. A technical trademark receives protection as soon as it is used in marketing the article; a common-law trade name becomes entitled to legal protection only after it has been used sufficiently to acquire the requisite secondary meaning. 68 Harv.L.Rev. 814, 823 (1955) (footnotes omitted).

■ Plaintiff recognizes that the above quoted language is the general rule and indeed quotes those very words in its Trial Memorandum. Plaintiff, however, argues that its use of "US" is arbitrary. After considering the testimony of plaintiff's president, Julius Buono, as to how the mark was chosen, the court is impelled to the conclusion that the mark is geographically descriptive. This finding, however, does not mean that the use of "US" as a mark can be other than geographically descriptive. That is a question better left for another case in which the evidence as to how and why a mark was chosen is not so compelling.

■ Since plaintiff's mark is not arbitrary, plaintiff must show that its mark has achieved secondary meaning

as plaintiff's trademark. See 3 Callmann, Unfair Competition and Trademarks, § 77.1 (2d ed. 1950). The question then is whether "US" has come to mean plaintiff and plaintiff only to the pertinent segment of the purchasing public. See Automatic Washer Co. v. Easy Washing Machine Corp., 98 F. Supp. 445 (N.D.N.Y.1951); Sterling Products Corp. v. Sterling Products, Inc., 43 F.Supp. 548 (S.D.N.Y.1942). The preponderance of the credible evidence impels to the conclusion that "US" does not have the requisite secondary meaning to entitle it to protection as plaintiff's trademark. The evidence clearly indicates that although "US" usually means plaintiff to the industrial sewing machine industry, it on occasion also means defendant. "US" has been used by defendant as an abbreviation of its corporate name; spare parts are often ordered from defendant under "U.S." as an abbreviation for Union Special and even plaintiff's representative in the Southern States, Cutters Exchange, referred to defendant as "U.S." in its catalogs. Plaintiff demonstrated that "US" usually refers to it, but it failed to show that prior to defendant's adoption of the highly stylized US mark, it was solely and exclusively known as "US" to the exclusion of all others. Although it was demonstrated that plaintiff exploited the block "US" both through advertising and actual use of the mark on its products, and indeed built up some good will in that mark, this evidence was not sufficient to counter defendant's evidence that the mark does not have the requisite secondary meaning to entitle it to protection.

■ Assuming, *arguendo*, that plaintiff's mark is entitled to protection, plaintiff still could not prevail in its common-law action for unfair competition since it has failed to prove by the preponderance of the credible evidence adduced in this case that there exists a likelihood of confusion caused by the adoption of defendant's mark. For a general discussion of similarity and confusion see 3 Callmann op. cit. supra §§ 80–82.5 and 1 Nims, Unfair Competition and Trademarks, §§ 221b–221p (4th ed. 1947). Counsel have deluged the court with a plethora of cases which serve to illuminate the law of unfair competition in precise factual settings. As helpful as these cases are, eventually each case involving a determination of whether or not there exists a likelihood of confusion must be determined by its particular facts. 1 Nims op. cit. supra at p. 670. In the case at bar the two marks are clearly visually distinct. The products involved are purchased one or two at a time, with businesslike care and consideration. The sewing machines are relatively expensive items which are ordered by number by a businessman, not relatively inexpensive household goods picked from a supermarket shelf by a harried housewife. If any actual confusion occurred, and it must be pointed out that the court is doubtful of this, such confusion was caused by the similarity of corporate names of plaintiff and defendant and the undeniable fact that plaintiff's "nom de plume" so to speak, is the abbreviation of defendant's corporate name. The mass of documents in evidence purporting to show confusion are either examples of secretarial carelessness caused by a failure to check business addresses or of a mix-up caused by the identical abbreviations of corporate names not attributable to the marks in question. There is no evidence that an appreciable number of ordinary prudent members of the purchasing public has been misled by defendant's emblem into believing that defendant's goods come from the same source as plaintiff's goods.

■ In addition to its common-law action, plaintiff also presented a statutory action based upon Sections 38 and 43(a) of the Trademark Act of 1946 (15 U.S.C. §§ 1120, 1125(a)). The preponderance of the credible evidence fails to establish that defendant procured its registration through the use of a false or fraudulent declaration or representation in violation of Section 38. Plaintiff has also failed to demonstrate by a pre-

**472**

ponderance of the credible evidence that defendant's mark constitutes a false designation of origin under Section 43(a).

It is the judgment of this court that defendant is entitled to judgment and therefore the complaint is dismissed.

The foregoing constitutes the required findings of fact and conclusions of law.

So ordered.