NATIONAL CONFERENCE OF BAR EX-
AMINERS and Educational Testing Ser-
vice, Plaintiffs and Counterdefendants-
Appellees,

v.

MULTISTATE LEGAL STUDIES, INC.,
Defendant and
Counterplaintiff-Appellant.

No. 81–2271.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1982.

Decided Nov. 2, 1982.

Rehearing Denied Jan. 18, 1983.

Paul F. Stack, Chicago, Ill., for defendant and counterplaintiff-appellant.

Thomas J. Byrnes, Dept. of Justice, Commercial Litigation Branch, Civ. Div., Washington, D.C., Robert M. Newbury, Chicago, Ill., for plaintiffs and counterdefendants-appellees.

Before SWYGERT, Senior Circuit Judge, BAUER, Circuit Judge, and DAVIES,* Senior District Judge.

SWYGERT, Senior Circuit Judge.

In this action for copyright infringement and unfair competition defendant and counterplaintiff-appellant Multistate Legal Studies, Inc. appeals from a permanent injunction imposed by the district court against Legal Studies' use of the names PRELIMINARY MULTISTATE BAR EXAMINATION and PMBE to designate its test preparation service and the practice examination administered therein. The district court held that

* The Honorable Ronald N. Davies, United States Senior District Judge of the District of North Dakota, is sitting by designation.

such use violated the unregistered trademark of the plaintiffs and counterdefendants-appellees, the National Conference of Bar Examiners and the Educational Testing Service in the MULTISTATE BAR EXAMINATION or MBE. In addition, Legal Studies appeals from the order of the district court dismissing its counterclaim which challenged the validity and constitutionality of the Copyright Office "secure test" regulation, 37 C.F.R. § 202.20, under which plaintiffs' MULTISTATE BAR EXAMINATION was registered. For the reasons stated herein, we affirm the judgment order of the district court's dismissal of the counterclaim, 495 F.Supp. 34, but we reverse the order enjoining Legal Studies from using the name PRELIMINARY MULTISTATE BAR EXAMINATION and the initials PMBE.

The facts of this case are undisputed. The plaintiff National Conference of Bar Examiners is a cooperative organization of members of the boards of state bar examiners having supervision over admission to the bars of the various states. The plaintiff Educational Testing Service is a nationally recognized organization engaged in the development and administration of tests and testing programs which are used nationwide by educators and educational administrators. As a joint venture, the plaintiffs are engaged in the preparation and distribution of examinations used by the various state bar admission boards in testing candidates for admission to the bar. The plaintiffs' MULTISTATE BAR EXAMINATION (MBE) is an objective multiple choice test which has been administered to bar applicants twice yearly since 1972 to determine their competency to practice law.

The defendant Multistate Legal Studies, Inc. is a Delaware corporation having its principal place of business in Philadelphia, Pennsylvania and Chicago, Illinois. In 1977 Legal Studies began conducting bar review seminars using study materials that it developed to prepare bar applicants to take the plaintiffs' MULTISTATE BAR EXAMINATION. Upon payment of a fee, bar applicants are enrolled in defendant's course at locations across the country and administered a practice examination patterned after the plaintiffs' MULTISTATE BAR EXAMINATION. The defendant began using the name PRELIMINARY MULTISTATE BAR EXAMINATION in 1978 to denominate the examination that it offered in its review course. The name subsequently became associated with the course as a whole as well as the examination developed by the defendant.

Legal Studies advertises and promotes the name PRELIMINARY MULTISTATE BAR EXAMINATION or PMBE throughout the country in magazine advertising, posters, and fliers circulated among the various law schools. In this advertising Legal Studies has repeatedly used the term "official publication" in reference to its course materials and claimed to have included in the PRELIMINARY MULTISTATE BAR EXAMINATION 120 questions reconstructed from plaintiffs' July 1978 MULTISTATE BAR EXAMINATION.

The plaintiffs filed a two-count complaint on October 26, 1978 in the Northern District of Illinois. In Count I plaintiffs alleged that Legal Studies, in violation of the copyright laws of the United States, infringed their copyright in the MULTISTATE BAR EXAMINATION by copying from one or more editions of their copyrighted July 1977, February 1978, and July 1978 bar examinations. According to the plaintiffs, Legal Studies' illegal copying was indicated by its literature which claimed that the PRELIMINARY MULTISTATE BAR EXAMINATION contained reconstructed questions from the MULTISTATE BAR EXAMINATION. In Count II of the complaint plaintiffs alleged that Legal Studies engaged in unfair competition in violation of the trademark laws of the United States, 15 U.S.C. § 1125(a), and the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, § 311–17, by falsely representing in its advertising and promotion that its examination was in some way connected with the plaintiffs or their product through use of the names PRELIMINARY MULTISTATE BAR EXAMINATION or PMBE and through its claim that the PMBE was an "official publication."

Legal Studies answered and counterclaimed in three counts. Subsequently, it

moved for summary judgment on Count III of its counterclaim by which it sought a declaration that plaintiffs' copyrights were invalid on the ground that 37 C.F.R. §§ 202.20(b)(4) and (c)(2)(vi), which permits registration of secure tests by the deposit of identifying material in lieu of complete copies, exceeds the statutory authority of the Register of Copyrights and in the alternative, that 17 U.S.C. § 408(c), which authorizes the issuance of the secure test regulation, is unconstitutional for being in excess of power granted to Congress in art. I, § 8, cl. 8, of the United States Constitution.[1]

On January 29, 1980 the district court continued Legal Studies' motion for summary judgment on Count III of its counterclaim so that Legal Studies could join the Register of Copyrights as a party defendant. On the plaintiffs' motion the court dismissed Counts I and II of Legal Studies' counterclaim challenging the capacity of the plaintiffs to obtain a copyright and the legal qualification of the MULTISTATE BAR EXAMINATION for copyright protection.

After Legal Studies filed an amended counterclaim joining Barbara Ringer, Register of Copyrights, as a party defendant, the district court issued an order on July 31, 1980 dismissing Count III of Legal Studies'

amended counterclaim pursuant to motions to dismiss filed by the plaintiffs and the Register of Copyrights. The district court held that the plaintiffs' copyrights were valid and concluded that section 408(c)(1) was sufficiently broad to accommodate the regulation that was adopted by the Register for secure tests.[2] The court found that, contrary to Legal Studies' assertion, no conflict existed between the regulation and 17 U.S.C. § 704(d), which provides that in the case of unpublished works a reproduction of the entire deposit must be made a part of Copyright Office records. The court took the view that when read in conjunction with section 408(c)(1), the term "entire deposit" in section 704(d) refers to the excised copies rather than a complete copy of the test as maintained by Legal Studies.[3] The court found no merit in Legal Studies' assertion that the failure to register a complete deposit for copyright purposes is contrary to the public interest as implied in the Constitution, *citing Washingtonian Publishing Co. v. Pearson,* 306 U.S. 30, 41–42, 59 S.Ct. 397, 402–403, 83 L.Ed. 470 (1939).

Subsequently, on March 30, 1981, plaintiffs obtained leave to file a second amended complaint. This complaint omitted the allegations of copyright infringement and

---

1. 37 C.F.R. § 202.20 prescribes rules pertaining to the deposit of copies and phonorecords for copyright registration which in relevant part provide:

 (b)(4) A "secure test" is a non-marketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration. For those purposes a test is not marketed if copies are not sold but it is distributed and used in such a manner that ownership and control of copies remain with the test sponsor or publisher.

 \* \* \* \* \* \*

 (c)(2)(vi) Tests. In the case of tests, and answer material for tests, published separately from other literary works, the deposit of one complete copy will suffice in lieu of two copies. In the case of any secure test the Copyright Office will return the deposit to the applicant promptly after examination: Provided, That sufficient portions, description, or the like are retained so as to constitute a sufficient archival record of the deposit.

2. 17 U.S.C. § 408(c) provides:

 (1) The Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration, and the nature of the copies or phonorecords to be deposited in the various classes specified. The regulations may require or permit, for particular classes, the deposit of identifying material instead of copies or phonorecords, the deposit of only one copy or phonorecord where two would normally be required, or a single registration for a group of related works. This administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title.

3. The judgment, however, made clear that Legal Studies would be permitted to fairly inform the public that it offers a service to prepare applicants to take the MULTISTATE BAR EXAMINATION or MBE.

pled only the single count of unfair competition. A bench trial of the unfair competition claim was held on June 30 and 31, 1981, which resulted in a final judgment permanently enjoining Legal Studies from using the words PRELIMINARY MULTISTATE BAR EXAMINATION and the initials PMBE or making any other false representation or description implying that its examination or review course were sponsored by or had some official connection with the plaintiffs or the MULTISTATE BAR EXAMINATION.

On July 10, 1981 the district court denied Legal Studies' previously-filed motion for reasonable attorney's fees based upon the plaintiffs' dismissal of Count I of their complaint on the rationale that the complaint was filed in good faith and there was at least an arguable infringement of the plaintiffs' copyright. The plaintiffs said that their reason for dismissing Count I was that the alleged infringement had ceased and there was no evidence that it had occurred since 1979, thus obviating the need for injunctive relief and substantial damages. The district court, in addition, surmised that plaintiffs dismissed Count I because of an earlier ruling that that particular issue was subject to a trial by jury. This appeal followed. Legal Studies challenges the rulings of the district court in plaintiffs' favor on the copyright claim, the unfair competition injunction, as well as the denial of attorney's fees and the taxing of certain items of costs to Legal Studies. We shall address each issue seriatim.

## I

Legal Studies seeks, among other things, a declaration that the Copyright Office regulation which governs the deposit requirements for secure tests—37 C.F.R. § 202.-20(c)(2)(vi)—is inconsistent with the Copyright Act of 1976, or, alternatively, that section 408(c)(1) of the Copyright Act, 17 U.S.C., which empowers the Copyright Office to promulgate the secure test regulation, is unconstitutional. Legal Studies also seeks a cancellation of plaintiffs' copyright registration of the MULTISTATE BAR EXAMINATION obtained in accordance with the challenged regulation.

■ A preliminary question which arises in connection with the copyright issue is whether a case or controversy continues to exist given the fact that plaintiffs' copyright infringement action was effectively dismissed without prejudice by the district court's allowance of plaintiffs' second amended complaint. As indicative of the continued controversy involved in the copyright claim, Legal Studies argues that it is reasonably apprehensive of civil and criminal liability because it fully intends to use the questions that were found to have infringed plaintiffs' copyright. In support of its position that the controversy survived the dismissal of Count I of the complaint, Legal Studies relies upon *Altvater v. Freeman,* 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943). There the Supreme Court held that it was error for the Eighth Circuit to declare as "moot" issues raised by the licensees' counterclaim regarding the validity of certain reissue patents following the dismissal of a patent infringement complaint when, in addition to the article involved in the original action, the licensees produced other articles claimed to fall under the reissue patents.

The plaintiffs deny that *Altvater* has any bearing on the present case. They suggest that Legal Studies' liability would be the same even without valid copyright registration of the MBE to support their position; plaintiffs refer to the language in 17 U.S.C. § 408(a) stating that registration is not a condition of copyright protection. The plaintiffs, however, overlook the provisions of 17 U.S.C. § 411 which in relevant part provides: "No action for infringement of a copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." We believe that Legal Studies has a reasonable apprehension of liability for copyright infringement under the circumstances and that consequently the controversy is not moot. *See Tubeco, Inc. v. Crippen Pipe Fabrications, Inc.,* 402 F.Supp. 838 (E.D.N.Y.1975), *aff'd,* 538 F.2d 314 (2d Cir. 1976).

■ Turning to the merits, Legal Studies first contends that the provision of the

secure test regulation, 37 C.F.R. § 202.-20(c)(2)(vi), requiring the Copyright Office to return the deposit of the secure test and retain only such portions, description, or the like so as to constitute a sufficient archival record of the deposit, is patently inconsistent with the requirements of section 704(d) of the Act. Legal Studies argues that the entire deposit of an unpublished work must be retained during the copyright life. The argument is based upon its interpretation of the words "entire deposit" appearing in section 704(d) to mean a complete copy. In support of this interpretation Legal Studies points to language in section 408(b) providing that the material deposited for registration shall include: "(1) in the case of unpublished works, one complete copy or phonorecord ...." This interpretation, however, ignores the important proviso that precedes subsection (1) at the beginning of subsection (b): "Except as provided by subsection (c), the material deposited for registration shall include—... (1)" Subsection (c), governing "Administrative Classification and Optional Deposit," provides in relevant part:

> The Register of Copyrights is authorized to specify by regulations the administrative classes into which works are to be placed for purposes of deposit and registration, and the nature of the copies or phonorecords to be deposited in the various classes specified. The regulations may require or permit, for particular classes, the deposit of identifying material instead of copies or phonorecords, the deposit of only one copy or phonorecord where two would normally be required, or a single registration for a group of related works.

Under this exception to the general deposit requirements for unpublished works, the Copyright Office has promulgated the se-cure test regulation permitting the retention of a "sufficient archival record" in the case of tests. The district court resolved the question of the meaning of "entire deposit" as used in section 704(d) by stating:

> Section 704(d) must be read, however, in conjunction with 17 U.S.C. § 408(c)(1). Section 408(c)(1) permits the deposit of "identifying material instead of copies." Therefore, the term "entire deposit" which appears in § 704(d) must refer to the excised copies. Otherwise the two sections, which were enacted at the same time, would be inconsistent with each other, thereby violating another fundamental rule of statutory construction.

Legal Studies does not specifically refute the district court's interpretation except to assert that the court used a "highly strained" interpretation of section 408(c)(1) "to vitiate the clear and unambiguous language of section 704(d)." We agree with the district court's view that the entire deposit may consist of excised copies and find that the "complete copy" requirement of section 408(b)(1) for unpublished works is inapplicable to secure tests and is excepted under section 408(c)(1) from normal deposit requirements.[4]

Legal Studies next argues that plaintiffs' reliance upon section 408(c)(1) as authority for the secure test regulation is wrong because a review of the relevant legislative history indicates that the purpose of the statute was merely to facilitate the registration of copyrightable material which was overly bulky or possessed of unusual physical characteristics. For this proposition Legal Studies relies upon a discussion appearing in H.Rep. No. 94–1476, 94th Cong., 2d Sess. 153 (1976), *reprinted at* 1976 U.S.Code Cong. & Ad.News at 5769, which considers possible applications of the

---

4. Legal Studies calls our attention to the fact that section 408(c)(1) uses the term "identifying material" to denote the optional deposit requirement, while the secure test regulation uses the term "sufficient archival record." According to Legal Studies, "The choice of terminology is significant; a 'sufficient archival record' is not intended to identify. Instead it is intended to hide from public view and thereby to defeat the purpose of copyright deposits." Reserving for now the question of the underlying purpose of copyright deposit, the record indicates that the examining corps of the Copyright Office treated the terms "sufficient archival record" and "identifying material" as synonymous. Of course, an agency's interpretation of its own regulation is entitled to considerable weight.

authority granted under section 408(c) to the Register of Copyrights to specify administrative classifications for deposited materials.[5]

From our review of the legislative history of section 408, it appears that the discussion about the purpose and possible applications of the statute is purely illustrative and does not evidence any restriction upon the scope of the power granted to the Register to classify materials for deposit. Although the House Report is silent on the precise subject of the deposit requirements for secure tests, it is evident that the legislation is intended to vest broad authority in the Register of Copyrights to fashion a workable system of registration and deposit of copyrighted works. The introductory sentence of a relevant section of the legislative history instructs: "Consistent with the principle of administrative flexibility underlying all of the deposit and registration provisions, subsection (c) of section 408 also gives the Register latitude in adjusting the type of material deposited to the needs of the registration system." *Id.* In view of this expressed policy of administrative flexibility over deposit requirements, we do not agree with Legal Studies' suggestion that the purpose of the statute was merely to facilitate the deposit of unwieldy items.

The district judge took a different approach and found that the legislative history has no bearing upon the question of secure tests; he held, nonetheless, that the language of the statute itself was sufficient to support the Register's authority to issue the regulation. The judge reasoned that since a statute cannot be expected to cover every specific situation that may arise in the future, it need go no further than to rely upon the language of section 408(c)(1), *citing Consumer Products Safety Comm'n v. G.T.E. Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). In addition, the judge relied upon a "bootstrap" argument that an agency's interpretation of a statute defining its jurisdiction and authority is entitled to considerable weight. *See Zenith Radio Corp. v. United States,* 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978). Although we find that the legislative history sheds some light upon the question of the scope of the Register's authority to issue the secure test regulation, we agree with the district judge's determination that authority for the secure test regulation can be found in the clear terms of the statute alone.[6]

 Legal Studies also challenges the validity of the secure test regulation upon constitutional grounds. It argues that the regulation serves to conceal the deposited

5. The House Report states in relevant part: Under this provision the Register could, where appropriate, permit deposit of phonorecords rather than notated copies of musical compositions, allow or require deposit of print-outs of computer programs under certain circumstances, or permit deposit of one volume of an encyclopedia for purposes of registration of a single contribution.

 Where the copies or phonorecords are bulky, unwieldy, easily broken, or otherwise impractical to file and retain as records identifying the work registered, the Register would be able to require or permit the substitute deposit of material that would better serve the purpose of identification. Cases of this sort might include, for example, billboard posters, toys and dolls, ceramics and glassware, costume jewelry, and a wide range of three-dimensional objects embodying copyrighted material. The Register's authority would also extend to rare or extremely valuable copies which would be burdensome or impossible to deposit. Deposit of one copy

or phonorecord rather than two would probably be justifiable in the case of most motion pictures, and in any case where the Library of Congress has no need for the deposit and its only purpose is identification. H.Rep. No. 94–1476, 94th Cong., 2d Sess. 153 (1976), *reprinted at* 1976 U.S.Cong. & Ad.News at 5769.

6. Furthermore, we agree with the district judge's observation that to adopt Legal Studies' version of section 704(d) would make the Copyright Act unavailable for protecting a secure test, which result would contradict the presumption that acts of Congress are passed for beneficial purposes, not for their frustration. Thus we are inclined toward the conclusion that Congress intended the Copyright Act to afford protection to confidential creative material such as the secure tests, the beneficial purpose of which would be defeated by the deposit of a complete copy of each annual version.

material from public view and thus defeats the purpose of copyright registration as mandated by art. I, § 8, cl. 8, of the United States Constitution, which empowers Congress to "[p]romote the progress of science and useful arts, by securing for limited times to authors and inventors exclusive rights to their respective writings and discoveries." Legal Studies bases this argument on the idea that actual copies are necessary to provide a public record that delineates the scope of the copyright monopoly.

In support of this argument Legal Studies relies upon the principles expressed in the dissenting opinion in *Washingtonian Publishing Co. v. Pearson,* 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470 (1939). There the Court rejected the notion that mere delay in making a deposit of copies in the Copyright Office was enough to cause forfeiture of a right to sue for copyright infringement under the former Copyright Act of 1909. The dissenting opinion, on the other hand, argued that the petitioner's failure to comply with the statutory requirement of prompt deposit under the Copyright Act of 1909 was fatal to the perfection of the petitioner's copyright.[7] In reaching that conclusion, the dissent reasoned that the purpose of the deposit requirement was to make available for public inspection the copyrighted work and to enable the Library of Congress to preserve desirable and useful works. *Id.* at 48–49, 59 S.Ct. at 405–406. But the Court took the opposite view:

> Sections 59 and 60 (requiring prompt deposit) were new legislation. They show clearly enough that deposit of copies is not required primarily in order to insure a complete, permanent collection of all the copyrighted works open to the public. Deposited copies may be distributed or destroyed under the direction of the librarian and this is incompatible with the notion that copies are now required in order that the subject matter of protected works may always be available for

information and to prevent unconscious infringement.

*Id.* at 38–39, 59 S.Ct. at 401–402. Of course, only the majority decision is legal precedent, and the recognition that the deposit and registration requirements under the Act were procedural only and not constitutional prerequisites for a copyright has been carried forward in the current statute by 17 U.S.C. §§ 408(a) and 411(a). Those provisions make clear that registration is not a condition of copyright protection. It follows that deposit regulations do not amount to disclosure requirements; nor as a practical matter can they function as such since a claimant may register any time prior to bringing suit on an infringement claim.

Inconsistently, Legal Studies discounts the applicability of *Washingtonian Publishing* because the case interpreted the Copyright Act of 1909 which covered only published works and presumably would not bear upon the provisions contained in the present Act for unpublished materials. Accordingly, Legal Studies argues that since all published documents, including the one at issue in *Washingtonian Publishing,* were documents made available for public inspection through publication, "the decision does not even remotely suggest Constitutional approval of the secret copyright" which characterizes, presumably, the unpublished copyrighted test here at issue. Implicit in *Washingtonian Publishing,* however, is the assumption that unregistered materials, even though published, would not be available for public inspection. It was on this assumption that the dissent assailed the majority's sanctioning of "secret copyrights," warning that "Congress did not intend to enshroud copyright monopolies in such secrecy." *Id.* at 48, 59 S.Ct. at 405. As a practical matter, Legal Studies' argument is of no weight; the mere fact that something is published does not guarantee that the work will serve as notice to poten-

---

**7.** Under the superseded 1909 Act, after a copyright had been secured by publication of the work with the notice of copyright as provided in section 9 of the Act, there should be

"promptly deposited in the Copyright Office ... two complete copies of the best edition thereof then published ...."

tial infringers of the scope of a copyright. For example, it is often the case that published materials eventually go out of print and such materials may be given only limited publication in the first instance. Therefore we conclude that the principle expressed in *Washingtonian Publishing* that copyright deposit is not required primarily to insure a permanent collection available for public inspection is here applicable in the case of an unpublished work.[8]

Legal Studies has not presented any case authority that supports its argument that the purpose of the deposit regulation is to insure disclosure of the copyrighted works.[9] This is clear even under section 704(d) relied upon by Legal Studies, which provides that the entire deposit of an unpublished work must be retained. That section refers to section 704(c) for procedures for retention of facsimile reproductions of unpublished works which provides:

> The Register of Copyrights is authorized, for specific or general categories of works, to make a facsimile reproduction of all *or any part* of the material deposited under section 408, and to make such reproduction a part of the Copyright Office records of the registration, before transferring such material to the Library of Congress as provided by subsection (b), or before destroying or otherwise disposing of such material as provided by subsection (d).

Section 704(c) requires a facsimile reproduction of all *or any part* of the material deposited, thus again negating the notion that only complete copies of the deposited material must be preserved. Moreover, as we already noted, under section 408(c) the deposit may consist of identifying materials.

In sum, the statutory scheme of the Copyright Act demonstrates that the deposit provisions are not for the purpose of disclosure. An observation on this subject by Professor Nimmer with respect to published works implicates unpublished works as well:

> It may be argued that deposit has a copyright as well as an archival function in that in an infringement action it permits a determination of whether the work which the copyright owner claims to have been infringed is in fact the same work in which copyright was originally claimed. But this copyright function is attenuated by the fact that the Library of Congress need not add all deposited works to its collection, it apparently is not required to preserve these works which it does not add to its collection and those which it does not so add although retained by the Copyright Office need only be preserved "for the longest period considered practical and desirable by the Register of Copyrights and the Librarian of Congress."

*Nimmer on Copyright,* § 7.17[a] (1981). By analogy, in the case of unpublished works, the copyright function is attenuated as previously noted by the fact that the Register of Copyrights under section 704(d) is required to preserve only a facsimile copy of "all or any part" of a section 408 deposit, which may itself consist of only identifying

---

**8.** We agree with the Register of Copyrights that the MBE would probably be classified as an unpublished work under 17 U.S.C. § 101 although publication *vel non* is immaterial since the secure test regulations are applicable and valid in either case.

**9.** Legal Studies attempts to shore up its argument that complete disclosure is required for copyright registration by pointing to dictum in *Merrell v. Tice,* 104 U.S. 557, 26 L.Ed. 854 (1882), a case decided under the Copyright Act of 1867, wherein the Supreme Court stated:

> ... the copyright books deposited with [the Librarian of Congress] are quasi-records, kept in his custody for public examination,— one object no doubt being to enable other

authors to inspect them in order to ascertain precisely what was the subject of copyright. *Id.* at 561.

Legal Studies believes that *Merrell,* unlike *Washingtonian Publishing* is applicable because the 1867 Act under which *Merrell* was decided extended copyright protection to unpublished works, although *Merrell* actually involved published material. In any event, under the current regulation, 37 C.F.R. § 220.20, the secure test deposit does make it possible to ascertain the "subject" of the copyright—that a certain examination has been registered— thus satisfying the standard set forth in *Merrell.*

materials. Thus whether the work is published or unpublished, the Copyright Act when viewed as a whole negates the notion that deposit requirements are for the purpose of delineating the scope of a copyright through public disclosure. For the foregoing reasons we conclude that the district court correctly held plaintiffs' copyright valid and we affirm the judgment order dismissing Legal Studies' counterclaims.

## II

Following a trial on plaintiffs' claim of unfair competition, the district court determined that plaintiffs had a legally protectable right in the names "MULTISTATE BAR EXAMINATION" and "MBE" and granted injunctive relief. Initially, the court found plaintiffs' trade name is neither generic nor commonly used to describe its bar examination. The court then found the name to be "merely descriptive" of a characteristic or quality of plaintiffs' test; further, because of long and extensive use, the name, has acquired a distinctiveness and a secondary meaning; and, finally, there is a likelihood of confusion between Legal Studies' PRELIMINARY MULTISTATE BAR EXAMINATION and plaintiffs' MULTISTATE BAR EXAMINATION. The court concluded Legal Studies' use of the name for its service constituted unfair competition and a violation of 15 U.S.C. § 1125(a).

The evidence submitted by plaintiffs showed that the MULTISTATE BAR EXAMINATION is a multiple choice test, designed to measure competency to practice law. The name was intended to convey the idea that the test can be used nationally but that it is not a national bar examination. Plaintiffs' MULTISTATE BAR EXAMINATION was first administered in 1972 and has been offered twice each year since then, ordinarily as one part of a state bar examination. Since its inception in 1972 through February 1981, the plaintiffs' examination has been taken by approximately 355,000 bar applicants. As a result, the name MULTISTATE BAR EXAMINATION has become known to virtually all law students. Though impressive, this evidence is irrelevant if under recognized legal criteria plaintiffs' trade name does not qualify for protection.

■ A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976). A corollary verbal formulation of the meaning underlying the word "generic" is the phrase "the common descriptive name" as a designation for a product. Neither designation affords trademark protection. This is true even though the name acquires a secondary meaning, that is, the product has become identified with a particular producer. For example, in *J. Kohnstam, Ltd. v. Louis Marx & Co.,* 280 F.2d 437 (Cust. & Pat.App. 1960), the producer claimed that through the advertising of its product over a period of two and one-half years, a secondary meaning became attached to the product. The Court of Customs and Patent Appeals disagreed and held that: "But such a circumstance cannot take the *common descriptive* name of an article out of the public domain and give the temporary exclusive user of it exclusive rights to it no matter how much money or effort it pours into promoting the sale of the merchandise." (emphasis in text.) 280 F.2d at 440. Indeed, under a provision in the Lanham Act, 15 U.S.C. § 1064, a registered trademark may be cancelled if at any time it "becomes the common descriptive name of an article or substance." [10]

Legal Studies argues that the phrase "MULTISTATE BAR EXAMINATION" is the only means of accurately describing the test prepared for determining the competency of applicants for admission to the bars of several states. In support of their contention that the term is descriptive, Legal Studies points to the testimony of Professor Joe Covington, the Director of Testing for the National Council of Bar Examinations. He testified

---

**10.** Webster's International Dictionary, 3d Edition, defines the word "common" as "of or relating to a community at large (as a family unit, social group, tribe, political organization, or alliance): generally shared or participated in by individuals of a community."

that initially a national bar examination was proposed. Bar examiners were fearful, however, of losing control over the admission of attorneys to the bars of their respective states. Consequently, the National Council of Bar Examiners avoided the use of a "national" bar examination; instead, the Council chose "multistate," which is descriptive of a characteristic of the test it administers.

Plaintiffs argue that a generic term for the test might be "standard bar examinations" or "multiple choice bar examinations," thereby refuting Legal Studies' contention that there is simply no other way to refer to this particular examination. As a threshold concern, we find the district court erroneously placed the burden of proof on Legal Studies on this issue of whether the mark is or is not generic.[11] Because the alleged trademark in this case is unregistered, plaintiffs had the burden of proving that its mark was not an unprotectible generic mark. *Reese Publishing v. Hampton International Communications, Inc.,* 620 F.2d 7, 11 (2d Cir.1980). Moreover, we are able to conclude on the record before us, *see Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 80 (7th Cir.1977), that the district court clearly erred in affording the terms "MULTISTATE BAR EXAMINATION" and "MBE" trademark protection.

We are of the view that the word "multistate" describes the geographic area over which the test is administered. It informs as to a certain feature of the bar examination—that it is suitable for use in more than one state. Thus, "multistate" is a geographically descriptive word. *See, e.g., U.S. Blind Stitch Machine Corp. v. Union Special Machine,* 287 F.Supp. 468 (S.D.N.Y.1968) ("U.S." held to be a geo-

graphically descriptive term); *National Auto Club v. National Auto Club, Inc.,* 365 F.Supp. 879 (S.D.N.Y.1973), aff'd, 502 F.2d 1162 (2d Cir.1974) (" 'National' is a geographic term descriptive in nature since it pertains to a feature of the service such as the purpose or function."). *See generally* J. Gilson, *Trademark Protection and Practice,* § 2.07, n. 6 (1979).

Under settled trademark law if the components of a trade name are common descriptive terms, a combination of such terms retains that quality. We note further that plaintiffs also use the initials "MBE" to designate their test is of no consequence. Abbreviations for generic or common descriptive phrases must be treated similarly. *F.S. Service, Inc. v. Custom Form Service, Inc.,* 471 F.2d 671, 674 (7th Cir. 1972).

The phrase "MULTISTATE BAR EXAMINATION" is, in our view, the most appropriate way of describing a test prepared for determining the competency of applicants to the bars of the several states. The phrase accurately describes plaintiffs' examination. The name has a common descriptive quality; it indicates the type of service merchandised and not any particular merchandiser. Thus we hold that plaintiffs' trade name is not protected and that the district court erred in holding to the contrary.

It was not an abuse of discretion for the district judge to deny Legal Studies its attorney's fees and costs in respect to plaintiffs' dismissal of their claim for copyright infringement shortly before trial. The judge gave careful consideration to the issue [12] and did not err in ruling that Legal Studies was not the prevailing party. Finally, on the issue of the award to plaintiffs

---

11. In its findings of fact and conclusions of law the district court stated that, "Defendant has failed to sustain its burden of showing the names Multistate Bar Examination and MBE are generic. . . . "

12. The district judge stated:
We find and conclude that defendant should not be awarded attorney's fees because of a dismissal of Count I. We have previously ruled that plaintiffs have a valid copyright. They have also adduced evidence of at least

an arguable infringement of the copyright in 1979. Evidence of this was introduced at the hearing on Count II. We do not go into the merits of the plaintiffs' copyright claim, but on the other hand, plaintiffs' evidence on this question was not entirely lacking. Since we were never required to make a finding on the issue of infringement of the copyright, we will not find that the claim was not meritorious or that defendant was the prevailing party on this issue.

of their costs covering the taking of certain pretrial depositions, the judge did not abuse his discretion in denying plaintiffs' request for reimbursement.

The judgment orders are reversed in part and affirmed in part.