**MIL–MAR SHOE COMPANY, INCORPORATED, Plaintiff–Appellee,**

v.

**SHONAC CORPORATION, Defendant–Appellant.**

No. 95–3588.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1996.

Decided Feb. 2, 1996.

Michael B. Apfeld (argued), Michael Ash, Nicholas A. Kees, Godfrey & Kahn, Milwaukee, WI, for Mil–Mar Shoe Company, Incorporated dba Warehouse Shoes.

Michael E. Husmann, Jonathan H. Margolies, Dyann L. Bumpke (argued), Kimberly Cash Tate, Michael, Best & Friedrich, Milwaukee, WI, for Shonac Corporation.

Before BAUER, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Mil–Mar Shoe Company, Inc., ("Mil–Mar") brought this action against the Shonac Corporation ("Shonac"), in Wisconsin state court, alleging common law trade name infringement, statutory trademark infringement under Wis.Stat. § 132.033, and unfair competition. Mil–Mar, owner of a chain of stores under the name "Warehouse Shoes," sought a temporary restraining order and a preliminary injunction to prevent Shonac from using the name "DSW Shoe Warehouse" (or any similar construction) to designate the retail shoe store that Shonac announced would be opened in the Greater Milwaukee area. The temporary restraining order was granted pending a hearing on the preliminary injunction. Shonac removed the case to federal court on the basis of diversity. 28 U.S.C. § 1332(a)(1). After a hearing on the matter, the district court granted the preliminary injunction, enjoining Shonac from using "DSW Shoe Warehouse," "Shoe Warehouse," or any other name confusingly similar to "Warehouse Shoes" in the Greater Milwaukee area. We reverse.

I.

Mil–Mar is a Wisconsin corporation that operates seventeen stores in the Greater Milwaukee area under the name "Warehouse Shoes" (four of which are called "Super Warehouse Shoes"). At least since 1970, Mil–Mar has continuously used and adver-

tised the "Warehouse Shoes" name in the area. Mil–Mar has registered trademarks for "Warehouse Shoes" and "Super Warehouse Shoes" with the Wisconsin Secretary of State. Mil–Mar currently spends over a million dollars a year advertising its stores under these names, and it has captured a significant share of the Greater Milwaukee shoe market. The "Warehouse Shoes" name is well-known in the area.

Shonac is an Ohio corporation founded in 1969 to operate retail shoe stores throughout the country. Shonac first began operating warehouse-type shoe stores in 1991, when it opened a store in Ohio under the name "Designer Shoe Warehouse." In 1994 the name was changed to "DSW Shoe Warehouse." Shonac has United States trademark registrations for its DSW logo and the name "DSW Shoe Warehouse," though the United States Patent & Trademark Office required Shonac to disclaim any right to exclusive use of "Shoe Warehouse" by itself. Shonac currently operates twenty stores, located throughout the United States, under the name "DSW Shoe Warehouse." Shonac spends millions of dollars advertising these stores each year.

In May 1995, Mil–Mar learned that Shonac planned to open a "DSW Shoe Warehouse" store in Wauwatosa, Wisconsin (i.e., within the Greater Milwaukee area) in October 1995. Mil–Mar promptly contacted Shonac requesting that it not use the "Shoe Warehouse" portion of the name. When Shonac refused to give up the name, Mil–Mar brought this action.

In addition to the above information, the district court considering Mil–Mar's preliminary injunction request had the following facts before it. The shoe stores run by Mil–Mar and Shonac are virtually identical in form, concept, and target customer. Both corporations run large, high-volume retail stores that carry a great variety of name brand shoes at discount prices.[1] The Wisconsin location chosen by Shonac is in a high traffic area, near a mall, and approximately three blocks from one of Mil–Mar's "Warehouse Shoes" stores. Hence Mil–Mar and Shonac would be in direct competition for area business. Shonac also put on evidence that, nationwide, 1) over 20,000 businesses use "warehouse" in their name, 2) over 8000 of which are retail stores, and 3) that hundreds of retail shoe stores use either "Warehouse Shoes" or "Shoe Warehouse" in their names.[2]

The district court treated Mil–Mar's three claims as follows. First, the court determined that the common law trade name infringement claim and the statutory trademark infringement claim under Wis.Stat. § 132.033 were subject to the same legal analysis. Mil–Mar conceded that registration of a trade name or mark in Wisconsin does not confer specific rights to the holder. Hence the only question was whether "Warehouse Shoes" could be protected as a de facto trademark by temporarily enjoining use of the name "DSW Shoe Warehouse."[3] Second, the court found that an unfair competition claim requires evidence that the defendant intended to mislead or deceive the public into believing that its product was associated with that of the plaintiff. Since Mil–Mar presented no evidence that Shonac intended to "palm off" its stores as belonging to Mil–Mar's chain, the court rejected the unfair competition claim.[4]

As for the trademark and trade name infringement claims (hereinafter treated as a single trademark infringement claim), the court first considered whether Mil–Mar was likely to prevail on the merits. The court found that "Warehouse Shoes" was capable of protection as a trademark. The court

---

1. The district court found that "Mil–Mar and Shonac have identical products and are competing for an identical, cost conscious market."

2. The following is a small sample of the shoe store names: Warehouse Shoe Sale, Comfort Shoe Warehouse, Men's Designer Shoe Warehouse, Shoe Warehouse, National Shoe Warehouse, The Shoe Warehouse, Warehouse Shoe Club, Shoes Warehouse, Mega Shoe Warehouse, Warehouse Shoe Outlet, Super Sales Warehouse Shoes, Sports Square Warehouse Shoes.

3. Mil–Mar does not contest the district court's unified approach to these claims; thus we take the same approach on appeal.

4. Mil–Mar does not appeal this finding, and we address it no further.

rejected Shonac's argument that the name was generic, as well as Mil–Mar's claim that the name was suggestive (or arbitrary or fanciful). Instead, the court found the name descriptive, thus entitling it to protection only if Mil–Mar could establish its secondary meaning in the Greater Milwaukee area. The court concluded that Mil–Mar had shown a reasonable likelihood of success on its claim that "Warehouse Shoes" had acquired secondary meaning and also that there was a likelihood of consumer confusion between "Warehouse Shoes" and "DSW Shoe Warehouse." As for Shonac's affirmative defense that "DSW Shoe Warehouse" was a legally permissible "fair use" of the trademark "Shoe Warehouse," the district court determined, as a matter of law, that fair use could not exist where there was likelihood of confusion. After then finding that Mil–Mar had demonstrated no adequate remedy at law and that Mil–Mar would suffer irreparable harm if the preliminary injunction was denied, and also that balancing the equities favored Mil–Mar, the district court granted Mil–Mar's request for a preliminary injunction.[5] The injunction prohibited Shonac's use of the name "DSW Shoe Warehouse," "Shoe Warehouse," and any other name confusingly similar to "Warehouse Shoes" in the Greater Milwaukee area.[6]

## II.

■ Whether a preliminary injunction should be granted by a district court generally involves a four-part analysis. The district court begins by considering whether the moving party has demonstrated: 1) a reasonable likelihood of success on the merits, and 2) no adequate remedy at law and irreparable harm if preliminary relief is denied. If the moving party clears these hurdles, the court must then consider: 3) the irreparable harm the non-moving party will suffer if the injunction is granted balanced against the irreparable harm the moving party will suffer if the injunction is denied, and 4) the public interest, i.e., the effect that granting or denying the injunction will have on non-parties. *Erickson v. Trinity Theatre, Inc.,*

13 F.3d 1061, 1067 (7th Cir.1994); *Wisconsin Music Network v. Muzak Ltd.,* 5 F.3d 218, 221 (7th Cir.1993); *Abbott Lab. v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir. 1992); *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir.1986); *Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386–87 (7th Cir.1984). The district court properly noted that, "[i]f it is plain that the party seeking the preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms." *Green River Bottling Co. v. Green River Corp.,* 997 F.2d 359, 361 (7th Cir.1993).

■ We begin by reviewing the district court's determination that "Warehouse Shoes" is not generic for trademark purposes. Marks are classified into five categories of increasing distinctiveness: 1) generic, 2) descriptive, 3) suggestive, 4) arbitrary, and 5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); *Dunn v. Gull,* 990 F.2d 348, 351 (7th Cir.1993). In general, the level of trademark protection available accords with the distinctiveness of the mark. Consequently, generic terms receive no trademark protection; descriptive marks are protected only if the mark has achieved "secondary meaning" in the relevant community; and suggestive, arbitrary, and fanciful marks are deemed inherently distinctive, and thus entitled to full protection. *Two Pesos,* 505 U.S. at 767–68, 112 S.Ct. at 2757; *Henri's Food Products Co. v. Tasty Snacks, Inc.,* 817 F.2d 1303, 1305 (7th Cir.1987). When the mark claimed as a trademark is not federally registered—"Warehouse Shoes" is not—the burden is on the claimant to establish that it is not an unprotectable generic mark. *Technical Publishing Co. v. Lebhar–Friedman, Inc.,* 729 F.2d 1136, 1139 (7th Cir.1984); *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 488 (7th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

■ We have held that placement of a mark in a particular category is subject to review for clear error, and thus may be set

---

5. The court ordered Mil–Mar to post a security bond in the amount of $20,000.

6. Shonac has since opened the proposed store under the name "DSW Shoes."

aside only if, after considering all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 438 (7th Cir.1990) (quoting *Walt–West Enters. v. Gannett Co.*, 695 F.2d 1050, 1058 (7th Cir.1982)). Since Mil–Mar does not dispute the district court's finding that "Warehouse Shoes" was not suggestive, arbitrary, or fanciful,[7] the question on appeal is whether the district court clearly erred in finding that "Warehouse Shoes" was descriptive, and thus not generic.[8]

 A generic term is one that is commonly used to name or designate a kind of goods. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). "Unlike a trademark, which identifies the source of a product, a generic term merely specifies the type, or genus, of thing into which common linguistic usage consigns that product." *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir.1983). A descriptive mark, on the other hand, is one that merely describes the ingredients, qualities, or characteristics of an article of trade or a service. *Id.* at 906. Such marks are generally not protectable as trademarks, "both because they are poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature." *Liquid Controls*, 802 F.2d at 936 (quoting *M.B.H. Enters. v. WOKY Inc.*, 633 F.2d 50, 54 (7th Cir.1980)). As such, descriptive marks are only protectable where the holder can establish that the mark has acquired "secondary meaning" in the collective consciousness of the relevant community. *Gimix*, 699 F.2d at 907.

Mil–Mar suggests that because "Warehouse Shoes" *describes* their store, the name is a descriptive mark rather than a generic one. Prior to the 1988 revisions of the Lanham Act, we regularly referred to generic terms (category 1 above) as "common descriptive" terms; and we distinguished them from "merely descriptive" terms, which we now simply designate as "descriptive" (category 2 above). *See* Trademark Law Revision Act of 1988, Pub.L. No. 100–667, 102 Stat. 3935 (codified as amended at 15 U.S.C. §§ 1064, 1065 (1995)) (replacing "common descriptive name" with "generic name"); *see also Liquid Controls*, 802 F.2d at 935–36; *Technical*, 729 F.2d at 1139; *National Conference*, 692 F.2d at 487. While two categories containing the word "descriptive" sometimes led to confusion (and thus precipitated the change), assuming that any element of description within a mark automatically precludes that mark from being found to be generic is factually and legally inaccurate and opposed to the tradition and purposes of trademark law.[9] We have repeatedly recognized that "[t]o allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from *describing* their own goods adequately." *Technical*, 729 F.2d at 1139 (emphasis added); *see also Miller Brewing*, 561 F.2d at 79 ("A generic or common descriptive term is one which is commonly used as the name or *description* of a kind of goods. It cannot become a trademark under any circumstances.") (emphasis added); *National Conference*, 692 F.2d at 488 (finding "multistate

7. At oral argument Mil–Mar's counsel proposed that the name "Warehouse Shoes" is at least descriptive, and is probably suggestive, if not arbitrary or fanciful. Mil–Mar's position in its brief on appeal, however, is simply that "Warehouse Shoes" is not generic. At any rate, our conclusion that the term is generic precludes any other designation.

8. Shonac argues that even if "Warehouse Shoes" is not generic, the phrase "Shoe Warehouse" *is* generic; thus "Shoe Warehouse" is equally available to all, and Shonac cannot be deprived of its right to employ the name. We address this argument *infra* at 1159–1160.

9. The distinction between highly descriptive terms and generic names is difficult to state in the abstract. The best that can be done conceptually is to observe that descriptive terms describe a thing, while generic terms name the thing. But in applying this to actual words, one quickly realizes that there is only a fine line between describing and naming. In one sense, a generic designation is the ultimate in descriptiveness.

2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12.05[1] (3d ed.1995).

bar examination" generic because it "accurately describes [the] examination"). Thus the argument that because "Warehouse Shoes" or "Shoe Warehouse" *describe* the retail establishments at issue—more specifically that the names effectively describe what is sold and the type of store doing the selling—the terms cannot be deemed "generic," and must be deemed "descriptive," simply misunderstands and oversimplifies the inquiry at stake for trademark purposes.

 The essential difference between "generic" terms and "descriptive" terms was and is the degree of distinctiveness, and thus their relative ability to serve as a source-identifier of particular goods and services. Because generic use implies use consistent with common understanding, we have often looked to dictionaries as a source of evidence on genericness. *See, e.g. Liquid Controls,* 802 F.2d at 937 (relying on Webster's Third New International Dictionary); *Gimix,* 699 F.2d at 905–06 (noting lack of dictionary evidence and finding "auto page" not generic); *Miller Brewing,* 561 F.2d at 80–81 (relying on Webster's Third New International Dictionary).

 Webster's Third New International Dictionary defines the noun "warehouse" as follows:

> **1:** a structure or room for the storage of merchandise or commodities: **a:** a wholesale establishment of the service type in which large inventories are carried **b:** a wholesale establishment operated by a chain store organization **c:** a place for the storing of surplus or reserve stocks of merchandise by a retail store **d:** a public institution for the storing of goods for others **2** *Brit.:* RETAIL STORE.

Webster's Third New International Dictionary 2576 (1993). The word "warehouse," as it is being used by both Mil–Mar and Shonac, thus would seem to potentially fit both the 1(a) and the 1(b) definitions. Both companies run chain stores that sell large inventories of goods (i.e., shoes) at wholesale, or at least "discounted," prices. Furthermore, the second definition, "retail store," obviously fits the stores at issue. Mil–Mar strenuously argues against this dictionary evidence, pointing out that the "retail store" definition is a *British* use of the word. It is true that of the many dictionary definitions presented to us, dictionaries that recognize a "retail store" or simply "store" meaning of "warehouse" generally note that this use is "British" or "chiefly British." [10] Mil–Mar would have us believe that *Americans* simply do not use the word "warehouse" to refer to retail store. Yet the evidence presented to the district court by Shonac, showing widespread use of "warehouse" to refer to retail stores, decisively rebuts any such claim.

When the district court considered the evidence on genericness, it seemed to focus upon the fact that the *primary* meaning of warehouse, the one that appears first in the dictionaries, is that of a large structure used for storage—not that of a retail store. It also noted that "warehouse" has multiple dictionary meanings.[11] The court concluded: "As such, the term 'Warehouse Shoes' does not appear to be subject to one common public understanding so as to be considered generic." Mil–Mar emphasizes the primary definition of "warehouse" and the image that first comes to mind when the word "warehouse" is mentioned—generally not a retail store. However, no principle of trademark

---

10. Note the following, all of which appear as the second definition of "warehouse" as a noun:

1. *"Brit.* a large retail store."
RANDOM HOUSE UNABRIDGED DICTIONARY 2142 (2d ed. 1993).
2. *"Chiefly British.* A large, usually wholesale shop."
THE AMERICAN HERITAGE DICTIONARY 2013 (3d ed. 1992).
3. *"esp. Brit.* a wholesale or large retail store."
THE OXFORD ENCYCLOPEDIC ENGLISH DICTIONARY 1629 (1991).
4. *"Brit.* a large store where wholesale goods are sold."

NEW WEBSTER'S DICTIONARY 1119 (1981).
5. *"a wholesale store or, sometimes, a large retail store. [Chiefly Brit.]"*
WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 2060 (2d ed. 1974).

11. It is somewhat unclear which factor was decisive for the district court: that the primary definition of "warehouse" was not that of a retail store or the bare fact that "warehouse" has multiple meanings. In either case, we determine that the district court was incorrect in inferring that such a finding mandated the conclusion that "Warehouse Shoes" was not generic.

law mandates that only the primary definition of a word can qualify as generic. In fact, we have previously found that "light" and its phonetic equivalent "lite" are generic when used to describe a type of beer, *Miller Brewing,* 561 F.2d at 80–81, even though the most common adjectival meaning of "light" has to do with weight.[12] We recognized that "light" and "lite," as applied to beer, could refer to color, flavor, body, alcoholic content, or a combination of these characteristics. *Id.* It did not matter that such common, accepted uses of "light" were not listed first and were not the only definitions in the dictionary. The question is whether the term is being *used* in a common or generic sense, not whether a *particular* use represents the most common use of that term. The district court's legal error in this regard infected its conclusion that "Warehouse Shoes" was not generic.

Shonac put on evidence that, nationally, over 8000 retail stores use the word "warehouse" in their names. Such names include: Furniture Warehouse, Warehouse Electronics, Just Plants Warehouse, Jewelry Warehouse, Mattress Warehouse, Carpet Warehouse, Warehouse Carpet, Warehouse Fragrances, Auto Parts Warehouse, Tire Warehouse, Bedding Warehouse, Warehouse Liquors, Pasta Warehouse, Warehouse Antiques, Warehouse Furniture and Bedding, Warehouse Fabrics, Warehouse Carpet & Tile, Warehouse Beer & Wine, The Clothing Warehouse, Bridal Warehouse, Wallpaper Warehouse, Book Warehouse, etc. Such widespread retail usage indicates that the American public commonly understands the term "warehouse" to apply to retail stores that sell any of a wide range of products. *See Technical,* 729 F.2d at 1138 (finding "Software News" generic after noting widespread use of "software" in periodical titles). When consumers hear the word "warehouse" in the retail context, as in the names listed above, they generally expect goods to be sold in high volume, from a relatively large store, at discount prices. The word "warehouse" is thus being used generically to denote a particular type or genus of retail store.

Significant use of a term by competitors in the industry has traditionally been recognized, along with dictionary evidence, as indicating genericness. *Miller Brewing,* 561 F.2d at 80; 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12.02[7][b] (3d ed.1995). Shonac has presented evidence that hundreds of retail shoe stores use some form of either "Shoe Warehouse" or "Warehouse Shoes" in their names. Although none of these stores were competing directly with Mil–Mar's "Warehouse Shoes" stores in the Greater Milwaukee area, and thus Mil–Mar had no incentive or standing to challenge these names, the breadth of the use nationally by other shoe retailers further substantiates our ultimate conclusion that both "Shoe Warehouse" and "Warehouse Shoes" are generic.

Both parties make much of the fact that Mil–Mar's "Warehouse Shoes" and Shonac's "Shoe Warehouse" are different terms. Shonac argues strenuously on appeal (as it did at the hearing below) that even if "Warehouse Shoes" is not generic, their own store name—"Shoe Warehouse"—*is* generic, and thus its use cannot possibly be enjoined. The decision of the district court ignores this argument, focussing its entire genericness analysis on whether "Warehouse Shoes" is protectable as a trademark. Shonac is correct that "Shoe Warehouse," like "Shoe Outlet" or "Shoe Mart,"[13] definitely qualifies as

**12.** Webster's Third New International Dictionary cites the following as the first definition of "light" as an adjective:
 **1 a:** having little weight: not heavy ... **b:** less heavy than others of its kind ... **c:** designed to move swiftly or to carry a comparatively small load ... **d:** being of small specific gravity: having relatively little weight in proportion to bulk ... **e:** containing less than the legal, standard, or usual weight.
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1308 (1993). It is not until we get down to the tenth

definition of "light" as an adjective that we find a meaning that could apply to a liquid like beer: "**10** of a beverage **a:** having a comparatively low alcoholic content ... **b:** having a low concentration of flavoring congenerics: characterized by a relatively mild flavor: not heavy." *Id.*

**13.** "Mart" has already been recognized as a generic term in the First Circuit. *S.S. Kresge Co. v. United Factory Outlet, Inc.,* 598 F.2d 694, 696 (1st Cir.1979), *later appeal* 634 F.2d 1, 1 (1st

generic; it is the generic term for a particular type of retail store that sells shoes. As such, it would appear that Shonac's right to use the term generically in the name "DSW Shoe Warehouse" should be unfettered. *See Henri's Food*, 817 F.2d at 1305 (noting that generic names are "irretrievably in the public domain"); 2 McCarthy, § 12.01[2] ("Generic names are regarded by the law as free for all to use. They are in the public domain.").

On the other hand, the district court found 1) that "Warehouse Shoes" was descriptive, rather than generic, 2) that the term had developed secondary meaning, and 3) that there was a likelihood of confusion between "Warehouse Shoes" and "Shoe Warehouse." Thus the court enjoined Shonac's use of "Shoe Warehouse" and the like. This raises an interesting analytical question. Can the holder of a legitimate trademark enjoin the use of a similar term that is likely to be confused with the trademark if the similar term is itself generic? Such a situation brings into conflict two fundamental principles of trademark law: the right of a trademark holder to protection of its mark and the right of all persons to use generic terms in their generic sense to name their products or services. Neither party presents controlling authority on the issue. We need not today decide this question, however, since we conclude that the district court clearly erred when it found "Warehouse Shoes" not to be generic.

We acknowledge that the genericness issue is a closer call with "Warehouse Shoes" than with "Shoe Warehouse." At first glance, it appears that "warehouse" is functioning as an adjective in Mil–Mar's "Warehouse Shoes," which makes it seem more descriptive. An easy "noun versus adjective" test to signify a mark as either generic or descriptive, respectively, does not, however, adequately characterize the law of this circuit,[14] nor would such a simplistic approach adequately embody fundamental principles of trademark law. The fact that "light" and

"lite" were being used as adjectives to describe beer did not defeat our conclusion that "light beer" and "lite beer" were generic terms that could not garner trademark protection. *Miller Brewing*, 561 F.2d at 80 ("The fact that 'light' is an adjective does not prevent it from being a generic or common descriptive word.") The word "warehouse" in both "Warehouse Shoes" and "Shoe Warehouse" plays the same role as the words "light" and "lite" do when they modify "beer." "Warehouse Shoes" and "Shoe Warehouse" both signify a particular type, category, or genus of retail stores: large stores that sell shoes in high volume at discount prices.

The district court relied on our finding, in *Henri's Food Products Co. v. Tasty Snacks, Inc.*, that "tasty" and "TAS–TEE" as applied to salad dressings were not generic. 817 F.2d at 1305. We noted that, in order for a term to be generic, it "must serve to denominate a type, a kind, a genus or a subcategory of goods." *Id.* at 1306. We concluded, however, that "tasty," in connection with salad dressing, simply did not play this role:

[U]nlike "light beer," "tasty salad dressing" is not a kind, sort, genus or subcategory of salad dressing. Rather, "tasty" is "merely descriptive" [i.e., "descriptive" under current parlance] and describes a quality found in many genuses of salad dressing. It is not an adjective which in any way serves to classify the noun to which it is attached. This kind of "merely descriptive" word can, at least in theory, convey a secondary meaning. "Merely descriptive" terms convey a quality or characteristic of the product. The term "tasty" describes the quality of the salad dressing. There really can be no suggestion that "tasty dressing" is a kind or type or subcategory of dressings, such as, for example, French dressing.

*Id.* As the above analysis shows, "Warehouse Shoes" and "Shoe Warehouse" are more like French dressing than tasty dress-

---

Cir.1980) (affirming earlier finding that "mart" is generic).

**14.** McCarthy remarks: "A rule of thumb sometimes forwarded as distinguishing a generic name from a descriptive term is that generic terms are nouns and descriptive terms are adjectives. However, this 'part of speech' test does not accurately describe the case law results." 2 McCarthy, § 12.02[5].

ing. The union of "shoe(s)" with "warehouse" in the names of the Mil–Mar and Shonac stores signifies a specific type of retail store and distinguishes that store from two other categories of stores: other shoe stores and other warehouse stores.

We have recognized in the past that the genericness of composite terms must be evaluated by looking at the term as a whole. *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366, 379 (7th Cir.) ("Dissecting marks often leads to error. Words which could not individually become a trademark may become one when taken together."), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).[15] On the other hand, some composite terms "are nothing more than the sum of their parts." *Liquid Controls*, 802 F.2d at 938. The *Liquid Controls* court noted that "multistate bar examination," "light beer," and "liquid controls" fall into this category. *Id.* We likewise find that "Warehouse Shoes" and "Shoe Warehouse" are nothing more than the sum of their parts. Their generic components produce a generic composite and signify nothing more than a warehouse-type store that sells shoes.

While Mil–Mar would have us believe that placing the word "warehouse" first in the name makes all the difference, this argument simply does not hold up. The substantial number of other retailers, including many shoe retailers, who position the word "warehouse" first in their names belies any attempt to draw much significance from such placement. In fact, one court has already held that the name "Warehouse Foods" is generic. *Warehouse Foods, Inc. v. Great Atlantic and Pacific Tea Co.*, 223 U.S.P.Q. 892, 893, 1984 WL 63624 (N.D.Fla.1984) (noting that the phrase has been "widely used in the trade as a generic designation for a type of food store"). We leave open the possibility that changing the order of terms in a name or phrase may make the difference between genericness and trademark potential.[16] Indeed, inverting word order often completely changes meaning. We simply find that, as the terms are used by the parties, "Warehouse Shoes" means the same thing as "Shoe Warehouse," and both terms are generic. The district court clearly erred when it found that "Warehouse Shoes" was not generic.

### III.

Because we find that "Warehouse Shoes" and "Shoe Warehouse" are generic, we need not address the district court's finding that "Warehouse Shoes" had secondary meaning in the Greater Milwaukee area and that the two store names were likely to be confused. We also do not address the district court's legal conclusion that fair use can never serve as a defense to a trademark infringement claim where a likelihood of confusion is established.[17] When a term is generic, protection as a trademark is categorically precluded. *Liquid Controls*, 802 F.2d at 935; *Miller Brewing*, 561 F.2d at 79. Evidence that the term *is*, de facto, strongly associated with a particular source of goods is irrelevant. "[A] generic term ... may not be exclusively appropriated as a trademark, regardless of the length of time it may have

---

15. For example, "Apple Computers" is a trademark even though "apple" and "computer" are generic terms when used alone.

16. In cases like this one, where inversion does not change meaning, the genericness of the inverted term essentially depends upon how large the cognitive leap is from the inverted term ("Warehouse Shoes") to the more common formulation ("Shoe Warehouse"). Because the word "warehouse" is so commonly placed first in the names of retail stores generally and shoe stores specifically, we find that the cognitive leap in this case is a mere hop and that "Warehouse Shoes" is no less generic than "Shoe Warehouse."

17. While we acknowledge the split of authority on the question, we note that neither Mil–Mar nor the district court has addressed Shonac's

claim that finding fair use incompatible with likelihood of confusion effectively renders Wisconsin's statutory fair use defense a nullity. Trademark claimants can only make out a case where they can show likelihood of confusion, *First Wisconsin Nat'l Bank of Milwaukee v. Wichman*, 85 Wis.2d 54, 270 N.W.2d 168, 174 (1978); *Spheeris Sporting Goods, Inc. v. Spheeris on Capitol*, 157 Wis.2d 298, 459 N.W.2d 581, 586 (Ct. App.1990), but fair use is an affirmative defense to a trademark infringement action in Wisconsin. Wis.Stat. § 132.033(5)(d)(3) (1995). Under the district court's analysis, the fair use defense would serve no purpose: either there is likelihood of confusion, which would preclude the defense, or there is no likelihood of confusion, in which case the defense is unnecessary.

been used by a single distributor at the consumer level and despite whatever promotional effort he may have expended to exploit it." *Henry Heide, Inc. v. George Ziegler Co.,* 354 F.2d 574 (7th Cir.1965); *see also Technical,* 729 F.2d at 1141 ("[E]ven if a generic term has developed a secondary meaning, it is unprotectable as a trademark."); *National Conference,* 692 F.2d at 487 (same).

Allowing a generic term to have trademark protection would overstep the purposes of trademark law and violate fundamental concepts of fair competition. "[I]t is no purpose of trademark protection to allow a firm to prevent its competitors from informing consumers about the attributes of the competitors' brands.... [A company] cannot appropriate the English language, and by doing so render a competitor inarticulate." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.,* 781 F.2d 604, 609–10 (7th Cir.1986). Because we conclude that both "Warehouse Shoes" and "Shoe Warehouse" are generic terms as used by Mil–Mar and Shonac, Mil–Mar has no probability of success on the merits. *Miller Brewing,* 561 F.2d at 81. Thus we REVERSE the district court's grant of the preliminary injunction against Shonac.