102 F.3d 1421
 27 Envtl. L. Rep. 20,813
 AIRCRAFT OWNERS AND PILOTS ASSOCIATION, Rufus A. Hunt,
Donald K. Irmiger III, et al., Plaintiffs-Appellants,
and
State of Illinois, by the Illinois Department of
Transportation, Intervenor/Plaintiff-Appellant,
v.
David R. HINSON, in his capacity as Administrator of the
Federal Aviation Administration, Federal Aviation
Administration, Chicago Park District,
and City of Chicago,
Defendants-Appellees.
 Nos. 96-3418, 96-3439.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 1, 1996.
Decided Nov. 21, 1996*.
 
 George Bullwinkel, Margaret M. Crosby, John T. Allen, Jr., Bullwinkel Partners; Richard J. Phelan (argued), Bradley S. Block, Kevin J. Clancy, Francis A. Citera, and Dianne L. Hicklen, Foley & Lardner, Chicago, IL, for Aircraft Owners and Pilots Association, Rufus A. Hunt, Donald K. Irmiger, III, Sunstone Financial Group, Unison Industries, L.P., Steven G. Whitney, Coleman Holt and Scott Gallagher.
 David R. Hinson, Federal Aviation Administration; Peter A. Appel, Department of Justice, Land & Natural Resources Division, Washington, DC, Thomas P. Walsh (argued), Anthony J. Masciopinto, Office of the United States Attorney, Civil Division, Chicago, IL, for David R. Hinson and Federal Aviation Administration.
 Michael J. Hayes (argued), John T. Roache, Jr., Gardner, Carton & Douglas; and Marguerite M. Tompkins, Chicago Park District, Law Department, Chicago, IL, for Chicago Park District.
 Frank Cicero, Jr., Stephen R. Patton, Jeffrey L. Willian, Anne J. McClain, Timothy A. Duffy, Wendy L. Bloom, Kirkland & Ellis; Andrew S. Mine, Susan S. Sher, Benna R. Solomon (argued), Office of the Corporation Counsel, Appeals Division, Laure A. Mullaney, Office of the Corporation Counsel, Litigation Division, Michael A. Forti, City of Chicago, Department of Law, Gail A. Niemann, Office of the Corporation Counsel, Law Department, and Marguerite M. Tompkins, Chicago Park District, Law Department, Chicago, IL, for City of Chicago.
 Arthur J. Howe, Steven A. Weiss, Schopf & Weiss; and Eleanor K. Roemer, Lake Michigan Federation, Chicago, IL, for Friends of the Parks, Lake Michigan Federation, and Openlands Project.
 Michael L. Shakman, Barry A. Miller, Edward W. Feldman, Diane F. Klotnia, and Thomas M. Staunton (on the brief), Miller Shakman Hamilton Kurtzon & Schlifke, Chicago, IL, for State of Illinois.
 Before CUMMINGS, BAUER and EASTERBROOK, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Plaintiff Aircraft Owners and Pilots Association ("Association") and others[1] sued David R. Hinson as Administrator of the Federal Aviation Administration, the Federal Aviation Administration, the Chicago Park District and the City of Chicago to enjoin the closing of Meigs Field airport, which was scheduled to take place at 10 p.m. on September 30, 1996, when the City's 50-year lease with the Chicago Park District for the Meigs Field site expired. Plaintiffs are users of Meigs Field, taxpayers and persons affected by additional noise and pollution allegedly caused by diverting flights from Meigs Field to Midway Airport in Chicago. The State of Illinois was permitted to intervene as a party plaintiff. Plaintiffs sought an injunction against the closing of Meigs Field and attendant relief. On October 1 the district court denied a preliminary injunction, resulting in this appeal.
 
 
 2
 Meigs Field is located on Northerly Island. The north end of the island is occupied by the Adler Planetarium and the airport runs from approximately the middle of the island to the south end. From 1920 to 1922 the island was built upon submerged lands in Lake Michigan east of Grant Park in Chicago. Illinois transferred title to the submerged lands to Chicago's City Park Commissioners in 1903 "for public purposes," to be maintained and controlled "in the manner provided by law for the government and maintenance of other parks * * * under its control". Title to the island was transferred to the Chicago Park District upon its organization in 1933.
 
 
 3
 In 1935 Illinois enacted statutes permitting the Park District to lease Northerly Island to the City of Chicago for airport purposes and permitting the City of Chicago to lease the island from the Park District for those purposes. Those statutes do not, by their terms, obligate the City or Park District to operate an airport. In 1946 the City and the Park District entered into a 50-year lease to permit the city to construct and operate an airport, now known as Meigs Field, on Northerly Island. It was then contemplated that the island would have to be expanded through additional landfill, and therefore in 1946 the City and the Park District sought permits to construct the landfill for an airport. The Illinois Department of Public Works issued a permit in March 1946 approving the expansion of Northerly Island for airport purposes, and in 1947 the United States War Department issued a permit to do the necessary work for such purposes. However, the permits do not obligate the City or Park District to operate an airport. Thereafter the City constructed additions to Northerly Island and built the Meigs Field airport, which opened in 1948 and operated until September 30, 1996. Prior to its closure, Meigs Field was accommodating approximately 51,000 operations and transporting 81,000 passengers yearly.
 
 
 4
 This lawsuit was filed on September 11, 1996, after the City of Chicago Council voted to change Northerly Island zoning to permit the construction of a park. This was 19 days prior to the expiration of the lease from Chicago to the Park District. On September 12, the State of Illinois was granted leave to intervene in order to compel the Federal Aviation Administration ("FAA") to prepare an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") as to the closure of Meigs Field pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. In the past, the FAA opposed the closing of Meigs Field. However, beginning in 1996 it withdrew its opposition and, as the district court stated, took "the position that it has no power to force the city to continue to operate because the [owner] Park District will not renew the lease." Aircraft Owners and Pilots Association v. Hinson, Order of the District Court at 15 (N.D.Ill. Oct. 1, 1996) [hereinafter District Court Opinion ]. The district court concluded that the FAA's decision not to compel the City to operate the airport for the useful life of the improvements was not a "major Federal action" within the meaning of NEPA that would require an EIS pursuant to 42 U.S.C. § 4332(2)(C). The court reasoned that the FAA had no discretion to exercise in connection with the closing of Meigs Field under the grant agreements it and the City had entered into in connection with certain capital improvements made to Meigs Field, which totaled just over $1 million. Even if the FAA had such discretion, the court concluded that the propriety of the FAA's decision to rely on a contractual remedy set forth in the grant agreements, rather than resorting to sanctions or threat of sanctions or a suit for specific performance or otherwise, was unreviewable under Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714. The district court also held that there is no private right of action under 42 U.S.C. § 1983 to enforce alleged violations of the Airport and Airways Improvement Act (49 U.S.C. § 47101 et seq.) and that the Public Trust Doctrine was not violated.
 
 
 5
 In its denial of the preliminary injunction requested by plaintiffs, the district court therefore concluded that the plaintiffs' chances of prevailing on the merits of their claims were "remote at best." The court found that the plaintiffs had shown irreparable injury because it was probable that the airport would be destroyed before any trial on the merits could be had, and the airport could not realistically be rebuilt once demolished. However, in balancing the harms, the district court determined that irreparable harm to the Park District would also result if the preliminary injunction were granted. The court noted the Park District's extensive and temporally and financially integrated series of improvements to the lakefront, which in turn depended upon its plans for Northerly Island, as well as a bond issue for harbor improvements that would likely need to be halted in the event of a preliminary injunction. The court believed it should proceed cautiously in a case such as this where it would be interfering with the governance decisions of the people's elected representative, and believed that such meddling would always cause irreparable injury.
 
 
 6
 On appeal, the plaintiffs' principal substantive argument is that the Public Trust Doctrine precludes the destruction of Meigs Field. The intervenor State of Illinois argues that (i) AAIA and other FAA regulations require that the grant agreements between the FAA and the City be construed to require the City to acquire Meigs Field from the Park District, and accordingly, (ii) the FAA's failure to enforce such agreements against the City was "major Federal action" under NEPA requiring that an EIS be prepared. The State asserts that Heckler v. Chaney does not apply to the FAA's decision because the FAA in effect granted a release permitting the City to close Meigs Field, an affirmative act rather than an enforcement decision, and even if Heckler v. Chaney applied, there is an abundance of "law to apply" in reviewing the FAA's decision. Amici curiae Friends of the Parks, Lake Michigan Federation, and Openlands Project argue before this Court that the mandatory injunction that plaintiffs seek would irreparably injure the people of Chicago by depriving them of the use of Northerly Island as a public park and therefore they advocate the denial of a preliminary injunction.
 
 
 7
 When considering whether a preliminary injunction should be granted, a district court must first consider "whether the moving party has demonstrated: 1) a reasonable likelihood of success on the merits, and 2) no adequate remedy at law and irreparable harm if preliminary relief is denied." Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 1156 (7th Cir.1996). If the moving party has demonstrated those items to the satisfaction of the court, then it must then look at: "3) the irreparable harm the non-moving party will suffer if the injunction is granted balanced against the irreparable harm the moving party will suffer if the injunction is denied, and 4) the public interest, i.e., the effect that granting or denying the injunction will have on non-parties." Id. This Court will review the district court's conclusions of law de novo, its findings of fact under a clearly erroneous standard, and its decision to deny an injunction for abuse of discretion. See Roth v. Lutheran General Hospital, 57 F.3d 1446, 1453 (7th Cir.1995); Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 508-509 (7th Cir.1994); Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 12-13 (7th Cir.1992).
 
 
 8
 We will first turn our attention to the plaintiffs' and intervenor's likelihood of success on the merits of their claims.
 
 
 9
 Claim under the National Environmental Policy Act
 
 
 10
 Plaintiffs' principal argument in the district court was that the FAA was required to prepare an EIS under NEPA. This argument is the only claim pursued by the intervenor State of Illinois.
 
 
 11
 An August 2, 1996, letter drafted by the FAA Director of Airport Safety and Standards explained that the FAA was not opposing the closure of Meigs Field because commencing at 10 p.m. on September 30, 1996, the City of Chicago, the sponsoring airport proprietor, would not have the legal authority to operate the airport after its lease from the Chicago Park District expired. Under NEPA, a federal agency must prepare an EIS for any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The State of Illinois contends that the FAA's decision not to compel the City to operate Meigs Field following September 30, 1996, was in effect a "release" of the City from its obligations under its grant agreements with the FAA and thus was a "major Federal action" within the meaning of NEPA. The defendants respond that there can be no major federal action in a case such as this, where the FAA lacked the discretionary authority to force the City to operate the airport on property in which it possessed no interest. Defendants assert that the only power the FAA had in this case was the ability to seek sanctions, and such enforcement authority is not subject to judicial review. This Court agrees with the district court's conclusion that the FAA's decision not to intervene was not a "major Federal action" within the meaning of NEPA and that, in any event, the enforcement decision of the FAA was not reviewable by the courts pursuant to Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714.
 
 
 12
 The FAA concluded that it had no discretion to exercise in connection with the closing of Meigs Field because the City had no further control over the site following the Park District's decision not to renew its lease with the City. The FAA relied on language in the grant agreements that specifically contemplated this possibility and provided for monetary reimbursement. We agree with the district court's determination that the FAA's conclusion was reasonable. First, the parties added a provision to the grant agreements that provided for repayment of grant money in the event "a long term lease or purchase agreement for the airport is not entered into prior to the current lease expiration in 1996." If the State is correct that the grant agreements obligated the City to continue to operate Meigs Field after 1996, then this lease contingency clause would have no meaning. As the district court recognized, "[i]t is a well-established rule that specific provisions trump general ones, and specifically drafted provisions take precedence over standard form ones." District Court Opinion at 36. See, e.g., AFSCME v. State Labor Relations Board, 274 Ill.App.3d 327, 210 Ill.Dec. 895, 902, 653 N.E.2d 1357, 1364 (1995).[2] Second, this Court does not agree with the State's arguments that the grant agreements, as thus construed, would be contrary to the underlying statute in this case, the AAIA.[3] This Court lacks qualification to question the FAA's determination under the AAIA when it entered into the grant agreements that the City had "good title, satisfactory to the [FAA] Secretary" given its lease arrangement with the Park District, and we will not look back ten years and question the FAA Secretary's determination at that time. Therefore, the language of the AAIA is simply not dispositive. The State's reliance on FAA regulations at 14 C.F.R. Part 152 is similarly unavailing because such regulations also give the FAA discretion regarding determination of a satisfactory property interest.
 
 
 13
 Although some case law indicates that there is "major Federal action" when an agency has power to influence or control an action, see Sierra Club v. Hodel, 848 F.2d 1068, 1089 (10th Cir.1988), the FAA's power in this case to influence the City by offering or threatening the withdrawal of federal grants or subsidies or by seeking sanctions simply does not rise to the level of major federal action, when neither its grant agreements with the City nor any applicable law required the FAA's approval of the closure of Meigs Field. See Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1074-1075 (9th Cir.1996); Sierra Club v. Babbitt, 65 F.3d 1502, 1512-1513 (9th Cir.1995); Goos v. ICC, 911 F.2d 1283, 1296 (8th Cir.1990). The FAA's August 2 letter is at most an omission--a decision not to try to stop the Park District from closing the airport. As the D.C. Circuit stated in Defenders of Wildlife v. Andrus, 627 F.2d 1238, 1244-1246 (1980), emphasizing that there is no "federal action" for purposes of NEPA where an agency has done nothing more than fail to prevent a party's act from occurring and has not undertaken some "overt act" in furtherance of that party's project: "No agency could meet its NEPA obligations if it had to prepare an environmental impact statement every time the agency had the power to act but did not do so."
 
 
 14
 Even if the FAA had discretion under the grant agreements to force the City to operate Meigs Field following the September 30 lease expiration, this Court agrees with the district court that the FAA's decision not to assert such rights against the City is not reviewable under Heckler v. Chaney. In that case, the Supreme Court held that a federal agency's decision not to institute enforcement proceedings was generally unreviewable, 470 U.S. at 831-832, 105 S.Ct. at 1655-1656, unless there is discernible "law to apply" to guide the court in reviewing the agency's exercise of its decision-making power, id. at 832-834, 105 S.Ct. at 1656-1657. The State first argues that the August 2 letter was essentially a "release of an entire airport" within the meaning of an October 2, 1989, order of the Department of Transportation (Order 5190.6A),[4] and thus not an agency enforcement decision subject to Heckler v. Chaney. But we agree with the district court's determination that it was unlikely that the State would prevail on this issue. The relevant section of the Order speaks of "granting any release from the obligations of a grant agreement which would enable a sponsor to abandon or dispose of an entire airport for non-airport purposes." However, we have construed the grant agreements as not obligating the City to operate Meigs Field on land it does not control, and therefore read the grant agreements as not providing the FAA with the ability to "enable" the City's decision not to operate Meigs Field. In other words, the FAA could not grant a release to the City from non-existent obligations under the grant agreements. Therefore, the FAA's August 2 letter does not fall within the purview of Order 5190.6A, and is more properly characterized as a decision not to institute enforcement proceedings within the meaning of Heckler v. Chaney.
 
 
 15
 The State also argues that there is "law to apply" in this case in the form of the AAIA, the FAA regulations at 14 C.F.R. Part 152, and the common law of contracts. But the "law to apply" to the agency's decision not to enforce in a particular instance must be law that governs the enforcement decision itself, rather than substantive prohibitions. See Heckler v. Chaney, 470 U.S. at 834-836, 105 S.Ct. at 1657-1658; Arnow v. United States Nuclear Regulatory Commission, 868 F.2d 223, 235-236 (7th Cir.1989), certiorari denied, 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 29. None of the provisions cited by the State requires the FAA to initiate remedial or enforcement action; the provisions all contain permissive language regarding FAA enforcement action and contain no law for a court to apply in reviewing the FAA's failure to take enforcement action. The presumption of the unreviewability of agency enforcement decisions found in Heckler v. Chaney clearly applies to the FAA's inaction in this case. The State's reading would obligate the FAA to test the State's theory about how the lease contingency provision in the grant agreements could be overcome, and no case we have found has held that a federal agency's failure to assert a debatable legal claim is reviewable under Heckler v. Chaney and amounts to "major Federal action" within the meaning of NEPA.
 
 
 16
 In sum, the district court correctly concluded that the FAA's determination that it lacked the ability to force the City to continue operating Meigs Field was proper and that such a decision was unreviewable in any event. Accordingly the FAA's refusal to intervene was not "major Federal action" under NEPA.[5]
 
 
 17
 We agree with the district court that in the circumstances presented, there was no violation of NEPA in the FAA's refusal to intervene in the Meigs Field closure, and the State has not demonstrated a reasonable likelihood of success on the merits of this claim.
 
 Public Trust Doctrine
 
 18
 In this Court, plaintiffs claim that the closing of Meigs Field would violate the Public Trust Doctrine because it would interfere with commerce and navigation, and plaintiffs assert that Northerly Island has been dedicated as a public airport, which use cannot be altered or destroyed even to accommodate another public use. However, as to the Park District's interference with commerce and navigation, the district judge observed, "plaintiffs provided no evidence of interference with navigation" and did not show that "dedication of Northerly Island as a public park would in any way interfere with the use of the adjoining waters for navigation, commerce and fishing." District Court Opinion at 21.
 
 
 19
 Under the 1903 Act described above, title to Northerly Island was vested in the South Park Commissioners, who were succeeded by the Chicago Park District. The 1903 Act enabled the Park District to use submerged lands, now Northerly Island, "for public purposes." As noted above, both the permits issued by the state and federal authorities in 1947 and 1963 to permit the filling of Northerly Island for airport purposes and the two statutes passed by the state legislature in 1935 to permit the operation of an airport on Northerly Island are permissive in nature; they do not require the Park District or the City to operate an airport for any period of time. This Court agrees with the district court's conclusion that neither these permits and statutes nor any other action taken by the Park District overrides the grant language in the 1903 Act allowing the Park District to use the land "for public purposes." There is no doubt that use of Northerly Island for a public park is a "public purpose." As a result, we are not required to determine whether and when, under Illinois law, land dedicated to a particular use can be altered for a different public use. See Paepcke v. Public Building Commission, 46 Ill.2d 330, 263 N.E.2d 11 (1970).
 
 
 20
 Therefore, the use of Meigs Field as a public park was consistent with the Park District's grant of authority and did not violate the Public Trust Doctrine, and the plaintiffs have not demonstrated a reasonable likelihood of success on the merits of their Public Trust Doctrine claim.
 
 Discovery Issues
 
 21
 Plaintiffs are the only parties raising discovery issues in their brief before this Court. However, they did not object in the district court within ten days and therefore have waived the right to appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir.1986). Moreover, discovery orders are not appealable prior to a final judgment. See Reise v. Board of Regents, 957 F.2d 293, 295 (7th Cir.1992). Finally, plaintiffs' notice of appeal failed to identify the discovery rulings as a ground for appeal and therefore are not before us. See Brandt v. Schal Associates, Inc., 854 F.2d 948, 954 (7th Cir.1988). In any event, the documents and portions of documents that plaintiffs allege were erroneously withheld from them relate to a determination of the irreparable harm that the parties will suffer, and as appears in the Conclusion of this opinion, regardless of the correctness of the balancing of the harms, the district court correctly denied the request for a preliminary injunction.
 
 Conclusion
 
 22
 Because this Court holds that the plaintiffs have not shown a "reasonable likelihood of success on the merits," the district court's denial of a preliminary injunction was proper and we are not required to inquire into whether the district court abused its discretion in its balancing of the harms. See Mil-Mar Shoe Co., 75 F.3d at 1156.
 
 
 23
 Judgment affirmed. The stay previously entered is dissolved.
 
 ADDENDUM
 
 24
 In its order of October 2, 1996, the Court indicated that it would take up the questions of sanctions against the City of Chicago for its failure to abide by the time fixed for filing its response to the emergency motions for stay pending appeal in the Court's order of September 30, 1996. Taking into account the instructions passed along to the City by the motions panel of the Court, the City's brief was due no later than 4:30 p.m. on October 1, 1996. Personnel were waiting to receive it, but nothing arrived until after that time. When the City's response was tendered without a proper motion to accept the untimely filing instanter, it was rejected by the Clerk's office. Later, copies of the response were thrown on the floor by the elevators in the Dirksen Federal Building, which were found by Court employees the following morning. Only then did the City serve a proper motion to file its response instanter, which explained the circumstances behind its inability to comply with the required time limits. The Court granted that motion.
 
 
 25
 The procedure used by the City failed to comply with our rules in at least two important respects. First, when the Court has specified a time for filing papers, the papers must be in the hands of the Clerk by the designated time. See Fed.R.App.P. 25(a). This case was on the fastest of expedited tracks, and the City's failure to file in a timely manner significantly inconvenienced the Court. Second, when it became clear that the response would be late, the proper procedure was to request leave to file the brief instanter. See Fed.R.App.P. 26(b). Although the City ultimately did just that, there is no excuse for its failure to follow this procedure in the first instance. The other parties to this litigation were just as pressed for time as the City, but they managed to comply with the Court's timetable. We hereby admonish the City that it must abide by the deadlines set by the Court or properly seek permission to be relieved from them. For its failure to follow the appropriate procedure in this case, we hereby fine the City $100 and caution it that we expect its full compliance in the future.
 
 
 
 *
 This opinion was originally released in typescript
 
 
 [1]
 The other plaintiffs are Rufus A. Hunt, Donald K. Irmiger III, Sunstone Financial Group, Unison Industries, L.P., Steven G. Whitney, Coleman Holt and Scott Gallagher
 
 
 [2]
 The State also argues that the City breached an implied duty of good faith by failing to pursue a lease, purchase or condemnation of the Meigs Field property. As the district court noted, any attempt to imply such a covenant in the grant agreements is at odds with the well settled rule that "[p]arties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith.... Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the parties." Saunders v. Michigan Avenue National Bank, 278 Ill.App.3d 307, 214 Ill.Dec. 1036, 1044, 662 N.E.2d 602, 610 (1996) (citations omitted); see also Baxter Healthcare Corp. v. O.R. Concepts, Inc., 69 F.3d 785, 792 (7th Cir.1995) (Where there is nothing to suggest that the parties could not have contemplated an event, an implied duty of good faith cannot be used to create obligations not expressly provided for in the contract.)
 If the FAA had truly intended to elicit a binding agreement from the City that it would obtain a long-term interest in the Park District's land, it could have used the specific grant assurance language employed in FAA agreements relating to Midway Airport in Chicago, in which the City affirmatively agreed to:
 acquire * * * either title in fee * * * free and clear of any reversionary interest, lien, easement, lease or other encumbrances * * * or in lieu thereof, provide assurances, satisfactory to the FAA, that this airport will continue to be operated and maintained as a public airport for a period of not less than 25 years, or more, subsequent to the expiration of its present lease.
 
 
 [3]
 The language of the AAIA in question in effect at the time the grant agreements were approved reads as follows:
 No project grant application for airport development may be approved by the [FAA] Secretary unless the sponsor, a public agency, or the United States or an agency thereof holds good title, satisfactory to the Secretary, to the landing area of the airport or site therefor, or gives assurance satisfactory to the Secretary that good title will be acquired.
 49 U.S.C.App. § 2208(b)(2) (repealed 1994) (emphasis added). In 1994, the AAIA was amended, but the current provisions have much the same effect. See 49 U.S.C. § 47106(b)(1).
 
 
 [4]
 Section 7-20 of that Order provides, in relevant part, that:
 The concurrence of the Associate Administrator for Airports (ARP-1) is required before granting any release from the obligations of a grant agreement which would enable a sponsor to abandon or dispose of an entire airport for non-airport purposes. Each request to release an entire airport shall be considered by ARP-1 on a case-by-case basis without limitation to the guidelines contained herein.
 
 
 [5]
 We need not address the issue whether a violation of NEPA in a case like this would permit a federal court to issue an injunction against the City or Park District, as opposed to the federal agency involved